UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| WBI Energy Transmission, Inc.,              ) | Civil No:  1:18-cv-00078-DLH-CSM |
|                                             ) | |
|                       Plaintiff,            ) | |
|                                             ) | |
|     vs.                                     ) | |
|                                             ) | |
|  An Easement and Right-of-Way               ) | |
|  Across                                     ) | |
|                                             ) | |
| 189.9 rods, more or less, located in        ) | |
| <u>Township 149 North, Range 98 W</u>       ) | |
| Section 11:  W1/2SE1/4                      ) | |
| Section 14:  NW1/4NE1/4                     ) | |
|                                             ) | |
| 227.8 rods, more or less, located in        ) | |
| <u>Township 149 North, Range 98 W</u>       ) | |
| Section 11:  N1/2SW1/4, W1/2SE1/4           ) | |
|                                             ) | |
| 242.0 rods, more or less, located in        ) | |
| <u>Township 149 North, Range 98 W</u>       ) | |
| Section 2:  SW1/4SE1/4                      ) | |
| Section 11:  NE1/4                          ) | |
|                                             ) | |
| 335.3 rods, more or less, located in        ) | |
| <u>Township 150 North, Range 98 W</u>       ) | |
| Section 35:  W1/2E1/2                       ) | |
|                                             ) | |
| 223.8 rods, more or less, located in        ) | |
| <u>Township 149 North, Range 98 W</u>       ) | |
| Section 28:  S1/2N1/2                       ) | |
|                                             ) | |
| 83.6 rods, more or less, located in         ) | |
| <u>Township 149 North, Range 98 W</u>       ) | |
| Section 14:  NW1/4                          ) | |
|                                             ) | |
| McKenzie County, North Dakota,              ) | |
|                                             ) | |
| David L. Hoffmann; Denae M.                 ) | |
| Hoffmann; Leonard W. Hoffmann and           ) | |
| Margaret A. Hoffmann, Trustees of the       ) | |
| Hoffmann Living Trust dated March 8,        ) | |
| 2002; Rocky & Jonilla Farms, LLP;           ) | |

| | |
|---|---|
| Randall D. Stevenson; and all other unknown owners of the above lands, | ) ) ) |
| Defendants. | ) |

## MEMORANDUM IN SUPPORT OF WBI ENERGY'S MOTION IN LIMINE TO EXCLUDE EVIDENCE OR TESTIMONY OF OTHER EASEMENT TRANSACTIONS

Plaintiff WBI Energy Transmission, Inc. ("WBI Energy") submits this memorandum in support of its Motion in Limine to preclude Defendants from introducing evidence or testimony of other easement transactions to establish the compensation that WBI Energy owes in this case. As described below, federal law recognizes the "before and after" rule as the proper method for valuing partial takings such as easements. According to this rule, value is determined by the difference between the market value of the owner's larger parcel before the partial taking and the market value of the remainder property after the partial taking. Federal law does not recognize the novel methodology that Defendants seek to employ. As such, the Court should exclude evidence of amounts paid for other easements, because the evidence is irrelevant and likely to confuse the issues or mislead the jury. *See* Fed. R. Evid. 401, 403.[1]

---

[1] This motion focuses on federal law that dictates the irrelevance of other easement transactions, whether presented through documentation, lay testimony, or expert testimony. WBI Energy also intends to file *Daubert* motions requesting the Court exclude the opinions disclosed by Defendants' experts, because these opinions independently fail to satisfy Federal Rule of Evidence 702.

## BACKGROUND

A.  **Procedural History**

The general background of this case is spelled out thoroughly in WBI Energy's pleadings and its Motion for Partial Summary Judgment and Immediate Use and Possession, which the Court granted by stipulation at the outset of this case. *See* Doc. Nos. 1–5. To summarize, WBI Energy is a full-service interstate natural gas transmission, gathering, and storage company within the meaning of the Natural Gas Act, 15 U.S.C. § 717a(6), operating under the jurisdiction of the Federal Energy Regulatory Commission ("FERC"). This case relates to WBI Energy's Line Section 27 pipeline project ("Line Section 27") consisting of an approximately 12-mile, 24-inch diameter natural gas pipeline and associated facilities in McKenzie County, North Dakota. To construct and maintain Line Section 27, WBI Energy required a strip of land fifty feet in width, together with temporary workspace, as depicted on Condemnation Complaint Exhibits 1 and 3 to 6 ("Subject Easements"). *See* Doc. Nos. 1-2, 1-4 to 1-7.

The Court has already ruled that WBI Energy has a right under the Natural Gas Act to take the Subject Easements and has granted WBI Energy possession of the easements on the terms requested in the Condemnation Complaint. *See* Order Adopting Stipulation, Doc. No. 19. As stated by the Court, "[t]he only issue remaining to be decided in this action shall be the amount of compensation owed to the Defendants for the Subject Easements." *See* Order Adopting Stipulation, Doc. No. 19.

B.  **Defendants' Proposed Evidence of Value**

Defendants intend to use other easement transactions on their properties as supposed evidence of market value for the Subject Easements. Defendants have produced in discovery a number of documents relating to other pipeline easements on their properties, and Defendants'

valuation experts opine that Defendants may use such easement transactions to value the easements taken by WBI Energy in this case. *See* Exhibit 1, Fitzgerald Report; Exhibit 2, Stockness Am. Appraisal Report. Defendants argue the Subject Easements lie within a pipeline corridor and that evidence of other easement transactions within this corridor establishes a market value for WBI Energy's easements. Exhibit 1, Fitzgerald Report at 1-2, Exhibit 2, Stockness Am. Appraisal Report at 35–36, 48–50.[2]

For instance, Defendants' Second Supplemental Expert Witness Disclosures state that the economist Timothy Fitzgerald will opine as to "the use of easements as indicators of market values." Exhibit 3. These disclosures also indicate that Defendants' appraiser Christopher Stockness will testify to the "impacts to the value of the property at issue in this proceeding, and the overall value of the property." *Id.* Stockness's Appraisal Report, however, relies solely on prices paid for other easements crossing Defendants' properties as his basis for establishing a per-rod value of WBI Energy's easements. *See* Exhibit 2, Stockness Am. Appraisal Report at 35, 42, and Addendum A (selecting 12 pipeline easement or right-of-way transactions provided by Defendants for "comparable sales"). Stockness purports to appraise solely the strips of land within the Subject Easements, without any attempt to value or measure the impact on the larger parcels owned by the Defendants. Exhibit 2, Stockness Am. Appraisal at 14 ("The subject of our appraisals consist of the following easements. Each easement is 50-feet in width and extends for a term of 99-years."). By contrast, WBI Energy's appraiser employed the standard "before and after" methodology to measure the loss in market value suffered by each Defendant's property as

---

[2] Citations to the Stockness report are to the page numbers marked on the report, as opposed to pages of the PDF.

a result of the Subject Easements.  Exhibit 4, Hoefs Appraisal Report for Property Owner Denae M. Hoffman.[3]

## STANDARD OF REVIEW

Under Federal Rule of Evidence 401, evidence is relevant if 1) it has a tendency to make a fact in question more or less probable and 2) that fact is of consequence to determine the action. Irrelevant evidence is inadmissible.  Fed. R. Evid. 402.  In addition, under Rule 403, the court may exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.  "Insofar as a finding is derived from the application of an improper legal standard to the facts, it cannot be allowed to stand."  9C Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 2585 (3d ed., Oct. 2020 Update).

## ARGUMENT

Here, Defendants improperly rely on easement transactions as evidence to value WBI Energy's taking.  WBI Energy moves the Court to exclude testimony or evidence of other easement transactions, because they are not legitimate evidence of market value under federal law.  As explained below, federal law governs this proceeding and requires the application of the "before and after" rule to value partial takings such as easements.  The introduction of per-rod rates paid for other easements is inconsistent with this rule, as recognized by numerous courts.  As a result, evidence of other easement transactions is irrelevant to the compensation owed, and any arguable relevance is outweighed by a danger of confusing the issues and misleading the jury.  *See* Fed. R. Evid. 401, 403.

---

[3] This report is attached as an example; Hoefs prepared separate appraisal reports for each of the tracts crossed by the Subject Easements, each employing a traditional "before and after" study of the owner's entire parcel, valuing the larger parcel before the easement taking and after the easement taking.

1. **Federal law governs the determination of just compensation in Natural Gas Act eminent domain proceedings.**

The federal Natural Gas Act is the source of WBI Energy's condemnation authority in this case. The act provides in relevant part:

> When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas, and the necessary land or other property, in addition to right-of-way, for the location of compressor stations, pressure apparatus, or other stations or equipment necessary to the proper operation of such pipe line or pipe lines, <u>it may acquire the same by the exercise of the right of eminent domain</u> in the district court of the United States for the district in which such property may be located, or in the State courts. The practice and procedure in any action or proceeding for that purpose in the district court of the United States shall conform as nearly as may be with the practice and procedure in similar action or proceeding in the courts of the State where the property is situated[.]

15 U.S.C. § 717f(h) (emphasis added).

Federal Rule of Civil Procedure 71.1[4] later abrogated the Natural Gas Act's incorporation of state "practice and procedure," in recognition of the interest in applying uniform rules to federal condemnations. *See All. Pipeline L.P. v. 4.360 Acres of Land, More or Less, in S/2 of Section 29, Twp. 163 N., Range 85 W., Renville Cty., N.D.*, 746 F.3d 362, 367 (8th Cir. 2014) ("§ 717f(h)'s state-law directive has been superseded"); *see also All. Pipeline L.P. v. 4.500 Acres of Land*, 911 F. Supp. 2d 805, 811–12 (D.N.D. 2012) ("Defendants' arguments regarding Alliance Pipeline's non-compliance with North Dakota law are rejected."). "Rule [71.1] affords a uniform procedure for all cases of condemnation invoking the national power of eminent domain . . . and supplants all statutes prescribing a different procedure." Fed. R. Civ. P. 7.1 Advisory Committee Notes, Original Report, Note to Subdivision (a); *see also All. Pipeline L.P.*, 746 F.3d at 367. "The

---

[4] Rule 71.1 was originally promulgated as Rule "71A."

adoption in 1951 of Rule [71.1] capped an effort to establish a uniform set of procedures governing all federal condemnation actions." *Kirby Forest Indus. v. United States*, 467 U.S. 1, 4 n.2 (1984).

In the Eighth Circuit, "[w]hat constitutes just compensation in a federal condemnation proceeding is a question of federal law." *United States v. Mahowald*, 209 F.2d 751, 752 (8th Cir. 1954); *U.S. v. Miller,* 317 U.S. 369, 379–80 (1943) (federal law governs the determination of compensation in federal condemnation proceedings because the measure of compensation is a question of substantive right "grounded upon the Constitution of the United States").[5] Specifically, the Takings Clause of the Fifth Amendment prohibits the taking of private property for public use, without just compensation.

2. **Federal law requires the application of the "before and after" rule to value partial takings.**

   a. **The method for valuing easements in federal condemnation proceedings is well-established under Eighth Circuit precedent.**

Federal courts have long recognized the "before and after" rule as the measure of damages in a partial takings case. *United States v. 9.20 Acres*, 638 F.2d 1123, 1126-27 (8th Cir. 1981) ("In partial taking cases, the proper measure of compensation is the difference between the fair and reasonable market value of the entire ownership immediately before the taking and the fair and reasonable market value of what is left immediately after the taking." (emphasis added) (collecting

---

[5] Though a minority of circuits have held that federal courts may look to state law for guidance on valuation issues in eminent domain proceedings, *Mahowald* remains controlling authority in the Eighth Circuit. *See Portland Nat. Gas Transmission Sys. v. 19.2 Acres of Land*, 318 F.3d 279, 282 n.1 (1st Cir. 2003) ("Perhaps surprisingly, several circuits [apply] state substantive law as well as formal practice [in Natural Gas Act condemnations]."); *WBI Energy Transmission, Inc. v. Easement & Right-of-Way Across in Big Horn & Yellowstone Ctys., Montana*, No. CV 14-130-BLG-SPW, 2015 WL 4216841, at *3 (D. Mont. July 10, 2015) (discussing split of authority). In any event, WBI Energy is aware of no North Dakota law that supports Defendants' attempt to value a taking based on per-rod rates paid for other easements.

cases)). Courts apply this rule to partial takings of property in general and to takings of easements specifically.

For instance, the Eighth Circuit has held that when an easement is taken by eminent domain, "<u>the proper measure of damages</u> is the difference between the market value of the land free of the easement and the market value as burdened with the easement." *United States v. 1,129.75 Acres*, 473 F.2d 996, 998 (8th Cir. 1973) (emphasis added) (collecting cases). Likewise, the United States Supreme Court has recognized that "[t]he valuation of an easement upon the basis of its destructive impact upon other uses of the servient fee is a universally accepted method of determining its worth." *United States v. Virginia Elec. & Power Co.*, 365 U.S. 624, 630 (1961). This standard comports with the weight of authority from courts around the nation, including the North Dakota Supreme Court. *See* 9 Nichols on Eminent Domain § G32.08(1)(b) (collecting cases); *accord*, *N. States Power Co. by Bd. of Directors v. Mikkelson*, 2020 ND 54, ¶ 11, 940 N.W.2d 308 (holding "<u>the proper measure of damages for a partial taking</u> [is] 'the difference in the market value of the property not taken before and after the severance from the part taken.'" (emphasis added, citation omitted)); *Otter Tail Power Co. v. Von Bank*, 8 N.W.2d 599, 605 (N.D. 1942) ("the value of the easement taken . . . was to be determined by the depreciation in value of the interest the defendant had in the property prior to the taking . . . .").

      **b.**      **The Uniform Appraisal Standards for Federal Land Acquisitions likewise makes clear that the "before and after" rule applies to partial takings in federal eminent domain proceedings.**

The Uniform Appraisal Standards for Federal Land Acquisitions (2016) ("Uniform Federal Standards"), also referred to as the "Yellow Book," is published by the Interagency Land Acquisition Conference in cooperation with the United States Department of Justice and

8

summarizes federal law applicable to eminent domain proceedings.[6] The Uniform Federal Standards are "a compendium of Federal eminent domain appraisal law, both case and statute, regulations and practices." 49 C.F.R. § 24.103 n.2.

Consistent with Eighth Circuit precedent, the Uniform Federal Standards provide that the measure of compensation for partial takings is the difference between the market value of the landowner's property before and after the acquisition. Uniform Federal Standards at 151 n.714–715 and accompanying text (citing *U.S. v. 91.90 Acres of Land, Situate in Monroe County, Mo.* 586 F.2d 79, 86 (8th Cir. 1978)). "The before and after method of valuation for partial acquisitions is accepted in all federal courts." Uniform Federal Standards at 152 (collecting cases).

**3. Defendants' reliance on other easement transactions to establish market value is inconsistent with applicable law, and other federal courts have rejected this "unorthodox" methodology.**

In contradiction of the settled "before and after" rule governing easement valuation, Defendants assert the Subject Easements can be valued based on rates paid by other pipeline companies for other easements on Defendants' properties. *See* Exhibits 1–3 (Defendants' expert disclosures and reports). Their theory is premised on the assertion that the highest and best use of the condemned strips of land would be for a pipeline corridor, which they use as a vehicle to admit evidence of other easement purchases as "comparable sales," rather than sales occurring on the open market. *See* Exhibit 2, Stockness Am. Appraisal Report at 2 (highest and best use "pipeline corridor"). This theory clearly contradicts precedent governing easement valuation because the methodology incorrectly shifts the focus from compensating the landowner for any diminution in the market value of owner's property (i.e. the "before and after" method) to the alleged "value" of the easements vis-a-vis per-rod going rates paid by other pipeline companies. The evidence of

---

[6] An electronic copy of the Uniform Federal Standards can be accessed at: https://www.justice.gov/file/408306/download.

Defendants' other easements must be excluded because it may induce the jury to award compensation based on an improper standard.

The use of easement transactions as evidence of market value lacks support in case law and has been rejected by several federal courts. The case of *Bauer v. Lavaca-Navidad River Authority* is often cited in support of such theories, because it held under Texas law that a plaintiff was entitled to present the subject tract's highest and best use as a pipeline corridor. *Bauer v. Lavaca-Navidad River Auth.*, 704 S.W.2d 107, 113 (Tex. App. 1985), writ refused NRE (July 9, 1986). Even in Texas, however, the state's supreme court has never endorsed the theory. In fact, the Texas Supreme Court has rejected on multiple occasions attempts to apply this theory and has yet to adopt the view that a pipeline corridor crossing an owner's parcel constituted a separate economic unit that could be valued based on prices paid for other easements. *See Bulanek v. WesTTex 66 Pipeline Co.*, 209 S.W.3d 98, 100 (Tex. 2006) (affirming reversal of jury verdict and holding that "<u>even if a pipeline corridor could be a separate economic unit</u> without improvements or characteristics setting it apart from surrounding property, petitioners' experts' testimony was no evidence of such a unit in this case." (emphasis added)); *Exxon Pipeline Co. v. Zwahr*, 88 S.W.3d 623 (Tex. 2002) (reversing jury verdict because expert's attempt to value pipeline corridor necessarily factored project enhancement into valuation).

Meanwhile, federal courts have expressed acute skepticism of such theories and have consistently excluded evidence of rates paid for other easements. For instance, another federal district court overseeing a Natural Gas Act condemnation excluded evidence of easement transactions based on a "pipeline corridor" theory of valuation, because the methodology "lacked any foundation in present fact, law or logic." *Questar S. Trails Pipeline Co. v. 3.47 Acres of Land*, No. CV 02-10 BB/LFG, 2003 WL 27385074, at *1 (D.N.M. July 31, 2003). According to the

10

court in *Questar*, the methodology "is not applied by real experts to similar facts in the real world and would therefore likely confuse and mislead the jury." *Id.* "An appraisal advanced solely to artificially inflate the market value of property may properly be excluded." *Id.* at *2 (citing *Union Pacific R. Co. v. 174 Acres of Land*, 193 F.3d 944, 947-48 (8th Cir. 1999)).

Similarly, the Fifth Circuit has previously reversed a condemnation award that relied on evidence of other easement transactions introduced as evidence of a pipeline corridor's value, referring to the approach as "an unorthodox theory of easement valuation which provided a drastically higher compensation award." *United States v. 8.41 Acres of Land, More or Less*, 680 F.2d 388, 391 (5th Cir. 1982). Neither the Eighth Circuit nor North Dakota law has endorsed the use of rates paid for other easements to value an easement taking, and any valuation based on "going rates" for easements is flatly inconsistent with controlling precedent. Again, "the proper measure of damages is the difference between the market value of the land free of the easement and the market value as burdened with the easement." *United States v. 1,129.75 Acres*, 473 F.2d at 998 (emphasis added).

The Uniform Federal Standards further explain why "going rates" for easements "cannot be used as a proxy for market value in federal proceedings requiring payment of just compensation":

> Going rates tend to reflect non-compensable considerations above the market value of the property acquired, such as avoiding the cost of condemnation or other litigation, and economic pressures to complete construction and place the planned facility or infrastructure in operation. As the Fifth Circuit recognized, "consideration of the expense and lost motion involved in relocation, additional construction, pipe and material costs and delay—none of which relate to the fair market value—are inevitably involved." Amid such nonmarket considerations,

<u>"[t]here is no basis for translating a dollar per rod settlement figure into a market value per acre figure."</u>

Uniform Federal Standards at 171 (emphasis added) (quoting *Transwestern Pipeline Co. v. O'Brien*, 418 F.2d 15, 18 (5th Cir. 1969) (reversing compensation award based on sales of other easements); *see also United States v. 10.48 Acres of Land*, 621 F.2d 338, 339 (9th Cir. 1980) (affirming trial court's exclusion of evidence of price paid by a condemning authority for an easement).

In other words, "going rates" paid for easements inevitably reflect non-compensable considerations beyond the loss experienced by the landowner. A pipeline company's willingness to pay premium rates for easements, due to economic pressures to complete construction or to avoid "the expense and lost motion involved in relocation, additional construction, pipe and material costs and delay," is irrelevant to the just compensation owed to the landowner in eminent domain. Uniform Federal Standards at 171 (quoting *Transwestern Pipeline*, 418 F.2d at 18). Moreover, to the extent that the purchaser of an easement has eminent domain power, the going rate tends to include considerations "such as avoiding the cost of condemnation or other litigation." *Id.* Finally, "valuing only the area subject to the easement (i.e. 'strip valuation') fails to 'compar[e] the fair market value of the entire tract affected by the taking before and after the taking . . . [that is] the correct measure of value in federal court condemnation.'" *Id.* at 170 (quoting *Transwestern Pipeline*, 418 F.2d at 21).

In sum, the rates that Defendants may have received for other easements crossing their properties are irrelevant and inadmissible, because using such rates to value the Subject Easements would contradict settled law on the valuation of partial takings.

## CONCLUSION

For the reasons set forth above, WBI Energy respectfully requests the Court grant its motion and preclude Defendants from introducing evidence or testimony of other easement transactions.

Dated this 2nd day of February, 2021.

                                                  */s/ Paul J. Forster*
                                                  Paul J. Forster (#07398)
                                                  Casey A. Furey (#08035)
                                                  Attorneys for Plaintiff,
                                                  WBI Energy Transmission, Inc.
                                                  CROWLEY FLECK PLLP
                                                  100 West Broadway Ave., Suite 250
                                                  P.O. Box 2798
                                                  Bismarck, North Dakota 58502-2798
                                                  Phone: (701) 223-6585
                                                  Fax: (701) 222-4853
                                                  pforster@crowleyfleck.com
                                                  cfurey@crowleyfleck.com