**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA**

| | | |
|---|---|---|
| WBI Energy Transmission, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER DENYING PLAINTIFF'S** |
| | ) | **MOTION IN LIMINE TO EXCLUDE** |
| vs. | ) | **EVIDENCE OF OTHER EASEMENT** |
| | ) | **TRANSACTIONS** |
| Easement and Right-of-Way Across, | ) | |
| | ) | |
| 189.9 rods, more or less, located in | ) | Case No. 1:18-cv-078 |
| Township 149 North, Range 98 W | ) | |
| Section 11: W1/2SE1/4 | ) | |
| Section 14: NW1/4NE1/4 | ) | |
| | ) | |
| 227.8 rods, more or less, located in | ) | |
| Township 140 North, Range 98 W | ) | |
| Section 11: N1/2SW1/4, W1/2SE1/4 | ) | |
| | ) | |
| 242.0 rods, more or less, located in | ) | |
| Township 149 North, Range 98 W | ) | |
| Section 2: SW1/4SE1/4 | ) | |
| Section11: NE1/4 | ) | |
| | ) | |
| 335.3 rods, more or less, located in | ) | |
| Township 150 North Range 98 W | ) | |
| Section 35: W1/2E1/2, | ) | |
| | ) | |
| 223.8 rods, more or less, located in | ) | |
| Township 149 North Range 98 W | ) | |
| Section 28: S1/2N1/2, | ) | |
| | ) | |
| 83.9 rods, more or less, located in | ) | |
| Township 149 North Range 98 W | ) | |
| Section 14: NW1/4, | ) | |
| | ) | |
| McKenzie County, North Dakota, | ) | |
| | ) | |
| David L. Hoffman; Denae M. Hoffmann; | ) | |
| Leonard W. Hoffmann and Margaret A. | ) | |
| Hoffmann, Trustees of the Hoffmann | ) | |
| Living Trust dated March 8, 2002; Rocky | ) | |
| & Jonilla Farms, LLP; Randall D. | ) | |
| Stevenson; and all other unknown owners | ) | |

of the above lands,                          )
                                             )
            Defendants.                      )

_____

Before the Court is the Plaintiff's "Motion in Limine to Exclude Evidence or Testimony

of Other Easement Transactions" filed on February 2, 2021.  See Doc. No. 62.  The Defendants

filed a response in opposition to the motion on February 23, 2021.  See Doc. No. 72.  The

Plaintiff filed a reply brief on March 9, 2021.  See Doc. No. 89.  For the reasons set forth below,

the Plaintiff's motion in limine is denied.


I.      **BACKGROUND**

The Plaintiff, WBI Energy Transmission, Inc. ("WBI Energy"), is full-service interstate

natural gas transmission, gathering, and storage company operating under the jurisdiction of

the Federal Energy Regulatory Commission ("FERC").  WBI Energy is also a holder of a

certificate of public convenience and necessity authorizing WBI Energy to acquire and operate

the interstate pipeline facilities previously owned and operated by Montana-Dakota Utilities,

Co. ("MDU").  See Doc. No. 1, ¶ 7.  As a holder of a certificate of public convenience and

necessity, WBI Energy may acquire the necessary rights-of-way to construct, operate and

maintain a pipeline for the transportation of natural gas "by the exercise of the right of eminent

domain" when such easement cannot be acquired by contract.  15 U.S.C. § 717f(h).

WBI Energy brought this condemnation action pursuant to Federal Rule of Civil

Procedure 71.1 and the Natural Gas Act ("NGA").  See Doc. No. 1, ¶ 2.  WBI Energy seeks to

"condemn permanent easements and temporary rights-of-way including workspace and access

roads" across the Defendants' properties in McKenzie County, North Dakota ("Subject

Easements"). Id.; see Doc. Nos. 1-2, 1-3, 1-4, 1-5, and 1-6. The purpose of the permanent

easement is to construct, operate, and maintain approximately twelve (12) miles of 24-inch

diameter pipeline from WBI Energy's existing Spring Creek Meter Station to the existing

Cherry Creek Valve Setting. See Doc. No. 1, ¶ 2.

On May 7, 2018, the Court adopted a stipulation jointly filed by parties and ordered that

WBI Energy shall have immediate use and possession of the Subject Easements for the purpose

of constructing a natural gas pipeline transportation system.[1]   See Doc. No. 19, p. 3.

Accordingly, the only issue remaining for trial is the amount of compensation owed to the

Defendants by WBI Energy for the Subject Easements. Id. In its motion in limine, WBI Energy

seeks to exclude evidence and testimony at trial of other easement transactions to determine the

compensation due to the Defendants for WBI Energy's taking. More specifically, WBI Energy

posits the Defendants may not introduce evidence of other pipeline easement sales to

demonstrate market value of the Subject Easements. The Defendants contend comparable

easement sales are relevant to determine the market value of the Subject Easements and should

be admissible at trial.

## II.   LEGAL DISCUSSION

All evidence must be relevant. Fed. R. Evid. 402. Relevant evidence has a tendency to

make a fact more or less probable than it would be without the evidence. Fed. R. Evid. 401.

However, pursuant to Federal Rule of Evidence 403, "[t]he Court may exclude relevant

---

[1] Pursuant to the parties' stipulation, the Court also dismissed WBI Energy's claim to condemn the temporary access road easement crossing the lands of Defendants David L. Hoffmann and Denae M. Hoffmann as depicted in Docket No. 1-3.

evidence if its probative value is substantially outweighed by a danger of one or more of the following:  unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  The district court has broad discretion in deciding whether to admit evidence at trial.  Olson v. Ford Motor Co., 410 F. Supp. 2d 869, 872 (D.N.D. 2006) (citing Fortune Funding, LLC v. Ceridian Corp., 368 F.3d 985, 990 (8th Cir. 2004).

In its motion in limine pursuant to Rules 401 and 403, WBI Energy seeks to preclude the Defendants from introducing evidence or testimony of other easement transactions as evidence of the value of WBI Energy's taking of the Subject Easements.  According to WBI Energy, evidence of other easement transactions is irrelevant because such transactions "are not legitimate evidence of market value under federal law."  See Doc. No. 63, p. 5.  WBI Energy contends federal courts, including the Eighth Circuit, have long recognized the "before and after" rule as the exclusive measure of damages in condemnation actions.  Thus, the Defendants' reliance on the per-rod rate paid for other easements on their property is misplaced as it does not conform with the accepted "before and after" rule.  The Defendants disagree, positing other easement transactions are relevant to aid the jury in determining the market value of WBI Energy's taking of the Subject Easements.  Both parties direct the Court to cases in favor of their positions; however, the particular issue before the Court, namely, whether comparable pipeline easement sales are relevant in determining the market value of the taking of a pipeline easement, has never been specifically addressed by this Court or the Eighth Circuit Court of Appeals.

A.      **THE NATURAL GAS ACT**

Pursuant to the Fifth Amendment to the Constitution, just compensation must be paid

when land is taken by eminent domain. U.S. Const. amend. V.  Just compensation is measured

by the fair market value of the property interest taken.  In enacting the Natural Gas Act, 15

U.S.C. §§ 717-717z, Congress delegated the federal government's eminent domain authority to

private entities.  See 15 U.S.C. § 717f(h).  Section 717f(h) provides:

> When any holder of a certificate of public convenience and necessity cannot
> acquire by contract, or is unable to agree with he owner of property to the
> compensation to be paid for, the necessary right-of-way to construct, operate,
> and maintain a pipe line or pipe lines for the transportation of natural gas, and
> the necessary land or other property, in addition to right-way, for the location or
> compressor stations, pressure apparatus, or other stations or equipment
> necessary to the proper operation of such pipe line or pipe lines, it may acquire
> the same by the exercise of the right of eminent domain in the district court of
> the United States for the district in which such property may be located, or in
> the State courts.  The practice and procedure in any action or proceeding for that
> purpose in the district court of the United States shall conform as nearly as may
> be with the practice and procedure in similar action or proceeding in the courts
> of the State where the property is situated; *Provided*, That the United States
> district courts shall only have jurisdiction of cases when the amount claimed by
> the owner of the property to be condemned exceeds $3,000.

15 U.S.C. § 717f(h).

While 15 U.S.C. § 717f(h) prescribes that a holder of a certificate of public convenience

and necessity may acquire property "by the exercise of the right of eminent domain," Section

717f(h)'s only directive regarding the eminent domain procedure is reference to the

incorporation of state "practice and procedure" when an action proceeds in federal district court.

However, that language was superseded by the adoption of Federal Rule of Civil Procedure

71.1, which establishes the procedures applicable to condemnation actions in federal court. See

Fed. R. Civ. P. 71.1; Alliance Pipeline L.P. v. 4.360 Acres of Land, 746 F.3d 362, 367 (8th Cir.

2014).  Both parties agree Rule 71.1 supersedes the language in Section 717f(h) incorporating

state "practice and procedure" into federal condemnation actions.  Therefore, Section 717f(h)

of the NGA looks to Rule 71.1 to provide the procedure applicable to a federal condemnation

action.  Alliance Pipeline, 746 F.3d at 367.

As to the substance of the condemnation proceeding – i.e., what compensation is owed

to condemnees for the exercise of eminent domain - Section 717f(h) of the NGA is silent.  See

Tenn. Gas Pipeline Co., LLC v. Permanent Easement for 7.053 Acres, 931 F.3d 237, 243 (3rd

Cir. 2019).  The parties have differing perspectives as to the measure of compensation owed,

and how such compensation is calculated, when a private entity condemns property pursuant to

the Section 717f(h) of the NGA.  WBI Energy contends the Court is to apply the "before and

after" rule in this federal condemnation action to determine just compensation owed to the

Defendants because just compensation in federal condemnation actions is a question of federal

law, and federal courts have long-recognized the "before and after" rule to determine

compensation for the taking.  While the Defendants do not question that the "before and after"

rule is one method to determine just compensation, the Defendants seek to also introduce

evidence of compensation received for other pipeline easements on their properties.


### B.    JUST COMPENSATION

As noted above, just compensation must be paid when land is taken by eminent domain.

U.S. Const. amend. V.  The Plaintiffs contend the proper method to determine compensation

owed to the Defendants is the application of the "before and after" rule.  The "before and after"

rule, as articulated by the Eighth Circuit, instructs that "[w]hen land is taken by eminent domain,

and the title acquired is not a fee, but merely an easement, the proper measure of damages is

the difference between the market value of the land free of the easement and the market value burdened with the easement." United States v. 1129.75 Acres of Land, 473 F.2d 996, 998 (8th Cir. 1973). The Eighth Circuit has certainly applied the "before and after" rule in condemnation actions to determine compensation due. See United States v. 9.20 Acres, 638 F.2d 1123, 1126-27 (8th Cir. 1981); United States v. 38.60 Acres of Land, 625 F.2d 196, 198 (8th Cir. 1980). According to WBI Energy, by applying the "before and after" rule, the Court must exclude evidence regarding other easement transactions on the Defendants' property as irrelevant. WBI Energy relies on several cases, as well as the Uniform Appraisal Standards for Federal Land Acquisition, for the proposition that evidence of other easement transactions is an unorthodox methodology to determine market value of the taking. The reasoning is that such transactions consider non-compensable variables such as avoiding the cost of litigation, economic pressures, construction delays, and is irrelevant. See Doc. No. 63, pp. 9-12. Instead, according to WBI Energy, the proper method to determine just compensation is simply the difference between the market value of the land free of the easement and the market value burdened with the easement. See 1129.75 Acres of Land, 473 F.2d at 998.

The Defendants disagree and contend WBI Energy's interpretation of the "before and after" rule is too narrow and cannot serve as the only method to determine just compensation owed to the Defendants in this case. The Defendants assert the Court may exercise its discretion to permit testimony regarding other pipeline easement transactions under Federal Rules of Evidence 401 and 403. Specifically, the Defendants argue that testimony regarding other easement transactions is relevant to determine the market value of a pipeline easement in the unique Bakken oil field development occurring in McKenzie County, North Dakota. The Court

agrees with the Defendants that, at this stage, evidence of other easement transactions *may* be

relevant and admissible to determine market value and therefore should not be *per se* excluded.

In 1943, the United States Supreme Court addressed "important questions respecting

standards for valuing property taken for public use." United States v. Miller, 317 U.S. 369, 370

(1943).  Specifically, in *Miller*, the Supreme Court was asked to consider whether a trial judge

erred in instructing the jury, when calculating compensation owed due to a taking, to limit the

jury's determination of market value at the time of the taking to exclude the increased value of

the property condemned due to the initiation of the Central Valley Reclamation Project in

California that had begun several years before the condemnation of the lands at issue.  Id. at

370, 372-73.  The lands at issue in *Miller* were condemned when tracks of the Central Pacific

Railroad were to be relocated due to prospective flooding of a previous right-of-way as part of

the project.  317 U.S. at 370.  In that matter, the Supreme Court discussed the measure of

compensation due under the Fifth Amendment and stated:

> It is conceivable that an owner's [compensation] should be measured in various
> ways depending upon the circumstances of each case and that no general formula
> should be used for the purpose.  In an effort, however, to find some practical
> standard, the courts early adopted, and have retained the concept of market
> value.

Id. at 373-74.  The Supreme Court continued in its discussion of the measure of

compensation, finding that if there has not been recent sales of properties within the vicinity of

the condemned property, the measure of what a willing buyer would pay a willing seller

involved "a guess by informed persons."  Id. at 374-75.  Most notably, the *Miller* Court

articulated that the measure of compensation owed, grounded upon the Constitution of the

United States, is a federal substantive right. Id. at 380.  In 1954, the Eighth Circuit echoed the

sentiment of the *Miller* decision, stating: "What constitutes just compensation in a federal

condemnation proceeding is a question of federal law." United States v. Mahowald, 209 F.2d 751, 752 (8th Cir. 1954).  WBI Energy cites this very proposition from *Mahowald* as the basis for their contention the "before and after" rule is the exclusive method to determine compensation owed to the Defendants:  Since the measure of just compensation in eminent domain proceedings is a federal substantive right, this Court should look only to the rule the Eighth Circuit has applied in previous cases  (the "before and after" rule) to determine how to measure compensation in this dispute.  The Court is not persuaded such an overly simplistic and exclusionary approach is appropriate in this case, particularly because the Eighth Circuit has instructed the measure of compensation should be determined on a case-by-case basis.  See 1129.75 Acres of Land, 473 F.2d at 998-99.

Unlike those cases cited by WBI Energy, this condemnation action was brought by a private entity, and not the United States, seeking to condemn property.  The NGA, the applicable federal statute under which WBI Energy derives its eminent domain authority, is silent as to the compensation owed to a comdemnee when an action is brought pursuant to it.  While Section 717f(h) grants eminent domain authority to private entities which hold a certificate of public convenience and necessity, it does not prescribe the method to determine just compensation or even that condemnees are to receive just compensation.  See 15 U.S.C. § 717f(h).  The Defendants ask the Court to take a more inclusive approach than the "before and after" rule when determining what evidence a jury may consider to measure just compensation, urging the Court to admit evidence related to other pipeline easement transactions.  For their proposition, the Defendants rely upon *Tennessee Gas Pipeline Co., LLC v. Permanent Easement for 7.053 Acres*, 931 F.3d 237 (3d Cir. 2019).

In *Tennessee Gas Pipeline*, the Third Circuit acknowledged the NGA's silence as to remedies available in condemnation proceedings brought under its purview, and considered subsequently whether state law or federal law applies to determine the measure of just compensation in actions brought pursuant to the NGA.  931 F.3d 237, 243-255 (3d Cir. 2019). The Third Circuit applied the United States Supreme Court's analysis of *United States v. Kimbell Foods*, 440 U.S. 715 (1979), to hold the NGA incorporates state law as the applicable federal rule to determine the measure of compensation.  See id. at 931 F.3d at 255.  In *Tennessee Gas Pipeline Co.*, the Third Circuit only reached the *Kimbell Foods* analysis because it concluded *Miller* did not apply because *Miller* "only concerned a condemnation by the federal government."  Id. at 247-49.[2]

This Court has previously noted there is considerable debate "whether evidence of what others are paying for easements, particularly when it is on a per rod (or per running foot) basis, should be allowed in cases when land is being condemned for pipelines and electric transmission lines."  Mosser v. Denbury Res., Inc., No. 1:13-cv-148, 2016 U.S. Dist. LEXIS 160376, n. 13 (D.N.D. November 18, 2016) (Magistrate Judge Charles S. Miller, Jr.).  In fact, some courts have taken a broad brushstroke when considering what evidence may be admissible to measure just compensation, relying heavily on state statutory interpretation.  For example, in *Barlow Ranch, Ltd. v. Greencore Pipeline Co. LLC*, the Wyoming Supreme Court concluded Wyoming's state statutes permitted the price paid for comparable easements to be considered in determining the market value for a pipeline easement. [3]  301 P.3d 75, 90 (Wyo. 2013).  A

---

[2] In *Tennessee Gas Pipeline Co*., the Court did not apply the applicable state law, but ultimately remanded the matter to the district court to apply state law to determine compensation owed to condemnees.

[3]  See *Barlow Ranch, Ltd.* for a collection of state cases which permitted the use of comparable easement sales to determine fair market value of pipeline easements in condemnation actions.  301 P.3d at 90-91.

Texas state court of appeals similarly concluded a trial court erred when it excluded evidence of other easement sales to determine compensation owed under the NGA.  See Bauer v. Lavaca-Navidad River Authority, 704 S.W.2d 107, 108 (Tex. App. 1985).

In *Bauer v. Lavaca-Navidad River Authority*, a Texas state court of appeals concluded the trial court erred in excluding evidence related to comparable easement sales when the landowner had established the "highest and best use" of the land at issue was as a pipeline corridor.  Id.  In a court trial, witnesses were permitted to testify about their opinion of the land's value, including testimony on comparable easement sales, subject to the condemnor's objections.  Id.  After the court trial, the trial judge ruled the evidence of comparable easement sales inadmissible.  Id.  The Texas state court of appeals reversed the trial court's decision to exclude the evidence.  The landowner in *Bauer* testified he had "thirty-five years' experience of acquiring and laying rights-of-way" and had negotiated the sale of an electrical power line, a railroad, and three (3) pipeline easements on the land in question before the taking.  Id. at 108-09.  The landowner further testified he always attempted to sell the easement within a 432-foot strip of his property and attempted to have the pipelines laid as close as possible to each other to allow room for possible future pipelines.  Id. at 109.  A real estate appraiser testified that the highest and best use of the condemned land was for the sale of pipeline easements.  Id.  Under Texas state law, "[t]he owner of the condemned land is entitled to have the fact finder consider, in determining its fair market value, the highest and best use to which the land is adaptable."  Id.  In *Bauer*, the appellate court concluded the landowner established the "highest and best use" of his property was for easement rights-of-way and such should have been considered by the fact finder based upon the testimony that at the time of the taking, three (3) pipelines, two electric transmission lines, and a railroad were in place within a well-defined corridor.

Therefore, the portion of the land taken had been severed and, under Texas law, the Court should consider testimony of the market value of the part taken as severed.  Having concluded the portion taken was effectively severed, the Texas appellate court concluded evidence of *comparable* easement sales should have been admitted.  Id. at 111.

If this Court were to follow the rationale outlined in *Tennessee Gas Pipeline Co.* and its progeny, the Court would then be tasked with looking to North Dakota law to determine whether evidence of other easement transactions is admissible as the NGA would incorporate North Dakota law as the applicable federal rule to determine the measure of compensation for this action.  See Tennessee Gas Pipeline Co., 931 F.3d at 255.  The question for the Court to then consider is whether under North Dakota law, the market value of WBI Energy's taking can be premised upon evidence of other pipeline easement transactions.  If the Court answers the question in the affirmative, such testimony is certainly relevant and admissible at trial. However, if valuation based upon testimony of other easement transactions is precluded under North Dakota law, then such evidence may be excludable under Federal Rules of Evidence 401 and 403.

### C.  **NORTH DAKOTA EMINENT DOMAIN LAW**

The Court turns to consider whether North Dakota eminent domain law permitted the consideration of comparable easement transactions to determine just compensation owed. Section 32-15-06.1 of the North Dakota Century Code prescribes the method and mode to establish just compensation in North Dakota condemnation actions:

1.  A condemnor shall make every reasonable and diligent effort to acquire property by negotiation.

2. Before initiating negotiations for the purchase of property, the condemnor shall establish an amount which it believes to be just compensation therefor and promptly shall submit to the owner an offer to acquire the property for the full amount so established.  The amount shall not be less than the condemnor's approved appraisal or written statement and summary of just compensation for the property.

3. In establishing the amount believed to be just compensation, the condemnor shall disregard any decrease or increase in the fair market value of the property caused by the project for which the property is to be acquired or by the reasonable likelihood that the property will be acquired for that project, other than a decrease due to physical deterioration within the reasonable control of the owner.

4. The condemnor shall provide the owner of the property with a written appraisal, if one has been prepared, or it one has not been prepared, with a written statement and summary, showing the basis for the amount it established as just compensation for the property.  If appropriate, the compensation for the property to be acquired and for the damages to remaining property shall be separately stated.

N.D.C.C. § 32-15-06.1. Section 32-15-22 of the North Dakota Century Code, permits the jury,

court, or referee, to assess damages in eminent domain proceedings as:

1. The value of the property sought to be condemned and all improvements thereon pertaining to the realty and of each and every separate estate or interest therein. If it consists of different parcels, the value of each parcel and each estate and interest therein shall be separately assessed.

2. If the property sought to be condemned constitutes only a part of a larger parcel, the damages which will accrue to the portion not sought to be condemned by reason of its severance from the portion sought to be condemned and the construction of the improvement in the manner proposed by the plaintiff.

3. If the property, though no part thereof is taken, will be damaged by the construction of the proposed improvement, the amount of such damages.

4. If the property is taken or damaged by the state or a public corporation, separately, how much the portion not sought to be condemned and each estate or interest therein will be benefited, if at all, by the construction of the improvement proposed by the plaintiff, and if the benefit shall be equal to the damages assessed under subsections 2 and 3, the owner of the parcel shall be allowed no compensation except the value of the portion taken, but if the

benefit shall be less than the damages so assessed the former shall be deducted from the latter and the remainder shall be the only damages allowed in addition to the value of the portion taken.

5.  As far as practicable, compensation must be assessed separately for property actually taken and for damages to that which is not taken.

N.D.C.C. § 32-15-22. [4]    The general rule for determining value under subsection (1) of N.D.C.C. § 32-15-22 is "a consideration of the fair market value of such property."   Hazelton v. Daugherty, 275 N.W.2d 624, 627 (N.D. 1979).  The fair market value is defined as the highest price property can be sold by a willing seller to a willing buyer.  Id.    To make such a determination, experts often look to "comparable sales" to measure the fair market value of property.  See e.g., Devils Lake v. Davis, 480 N.W.2d 720, 724 (N.D. 1992).  However, this is not "an absolute or exclusive standard or method" to determine the value to be paid in condemnation actions.  Daugherty, 275 N.W.2d at 627.

Similar to federal law, the North Dakota Supreme Court has applied the "before and after" rule to value the damages owned to a landowner for a taking.  See Lenertz v. City of Minot, 923 N.W.2d 479, 488 (N.D. 2019); Northern States Power Co. v. Effertz, 94 N.W.2d 288, 294 (N.D. 1958).  The North Dakota Supreme Court has instructed that when determining the value of land taken by eminent domain, "it is proper to consider the adaption of the land for purposes other than those to which it is put at the time of taking"  Wishek Inv. Co. v. McIntosh Cty., 45 N.W.2d 417, 423 (N.D. 1950).  However, a landowner is not entitled to damages based upon "speculative, uncertain or merely possible" land uses.  Id.  More recently, in *Cass County*

---

[4] In *Alliance Pipeline L.P.*, the Eighth Circuit concluded Federal Rule of Procedure 71.1 preempts the application of North Dakota state procedures in condemnation actions that proceed in North Dakota federal court.  746 F.3d at 366.  The Court reads *Alliance Pipeline L.P.* to limit the application of North Dakota's procedural rules for condemnation, but does not foreclose the application of North Dakota's substantive law to condemnation actions proceeding in federal court when federal law directs that state substantive law is adopted as the federal law.

*Joint Water Resource District v. Erickson*, the North Dakota Supreme Court discussed compensation in eminent domain cases based on the land's "highest and best use": "[I]n a condemnation action, compensation is not to be estimated simply with reference to the value of the land to the owner for the purpose it is then used, but with reference to what its present value is in view of the uses to which it is reasonably capable of being put." 918 N.W.2d 371, 376 (N.D. 2018) (quoting Frederickson v. Hjelle, 149 N.W.2d 733, 744 (N.D. 1967). The landowner claiming damages based upon the land's "highest and best use" has the burden of proof to establish the amount of damages due to the landowner. Daugherty, 275 N.W.2d 624, 627 (N.D. 1979). The North Dakota Supreme Court further instructed "the landowner claims the land being taken is not currently being used at its highest potential, the burden of proof is on the landowner to prove the highest and best use." Erickson, 918 N.W.2d at 376 (citing 4 Julius L. Sackman, Nichols on Eminent Domain, § 12B.14 (Matthew Bender, 3d ed. 2018).

It is clear that under North Dakota eminent domain law, the trier of fact may consider the land's "highest and best" to aid in determining the measure of compensation owed for its taking, similar to the Texas state law applied in *Bauer*. Moreover, the North Dakota Supreme Court has not articulated an exclusive method (the "before and after" rule) to apply to determine just compensation in condemnation actions. Accordingly, following the rationales of *Bauer* and *Erickson*, the Court is not convinced that under North Dakota law, evidence of other easement transactions would be considered irrelevant and inadmissible under Federal Rules of Evidence 401 and 403.

15

**D.  APPLICABLE LAW TO THIS CASE**

The issue squarely before the Court is whether the Defendants may introduce evidence at trial of other pipeline easement transactions to establish the compensation WBI Energy owes in this case.  WBI Energy seeks to exclude such evidence pursuant to Federal Rules of Evidence 401 and 403 as it is "irrelevant" to the determination of damages owed to the Defendants.  Upon review of a multitude of cases, the Court is not convinced such evidence lacks relevance and should be *per se* excluded at trial.

As discussed at length, the NGA is silent as to the compensation owed to a comdemnee. See 15 U.S.C. § 717f(h).  While other circuits have concluded the NGA incorporates state law as the applicable federal rule to determine the measure of compensation, the Eighth Circuit has not addressed the issue.  See e.g., Tennessee Gas Pipeline Co. at 931 F.3d at 255.  At this juncture, the Court need not explicitly hold, as the Third Circuit did in *Tennessee Gas Pipeline Co.*, that *Miller* in inapposite to cases arising from Section 717f(h) of the NGA and state substantive law applies as the applicable federal rule to determine just compensation owed. Instead, the Court observes that under either federal common law developed in the Eighth Circuit or North Dakota state substantive law, evidence of other pipeline easement transactions *may* be relevant to determine the measure of damages owed to a landowner for a taking, depending on the facts, conditions, and nature of the taking.  In fact, in *1129.75 Acres of Land*, the Eighth Circuit cautioned against adopting a *per se* exclusionary rule when it found a trial judge failed to exercise his discretion when he refused to allow the introduction of comparable sales which occurred after the date of the taking.  473 F.2d 996, 999.  The Eighth Circuit observed that "[i]n all recorded cases, however, the courts have refrained from adopting a per se exclusionary rule."  Id. at 998. "Generally, evidence of sales of comparable property is

16

persuasive evidence of market value, either as direct proof or in support of a witness's opinion." Id. at 998. The threshold question of admissibility is within the sound discretion of the court. Id. Federal courts favor a broad rule of admissibility and the rule are designed to permit all relevant evidence, unless there is "sound and practical reason" for excluding evidence. Id. at 999. In *1129.75 Acres of Land*, the Eighth Circuit ultimately held that "under appropriate circumstances evidence of subsequent comparable sales is admissible as an aid to determining market value." Id. Of course, *1129.75 Acres of Land* involved the use of comparable sales of land and not comparable sales of pipeline easements. Nonetheless, this Court agrees that a *per se* exclusionary rule regarding evidence of comparable pipeline easements, as proposed by WBI Energy, is not appropriate in this particular case.

WBI Energy has not directed the Court to any case that renders evidence of other pipeline easement transactions *per se* excludable under Rules 401 and 403. After an extensive review of applicable case law across multiple jurisdictions, the Court has found no case that requires a blanket prohibition on evidence of comparable pipeline easement transactions to measure compensation pursuant to Rules 401 and 403. Moreover, adopting a *per se* exclusionary rule runs contrary to the United States Supreme Court's declaration that "the measure of compensation due under the Fifth Amendment should be measured in various ways depending upon the circumstances of each case and that no general formula should be used for the purpose." Miller, 317 U.S. at 373-74.

In this case, it may be appropriate for the fact finder to consider comparable pipeline easement transactions, particularly based on the unique nature of pipeline development in the Bakken oil field development occurring in McKenzie County, North Dakota. The record reveals there are currently more than 28,000 miles of gathering and transmission pipelines in

17

North Dakota for which pipeline easements have been obtained.  <u>See</u> Doc. No. 73-9, pp. 13-14.

This scenario was certainly never contemplated by the courts in the decades prior to the oil

boom in North Dakota.  The scenario was never contemplated when the United States Supreme

Court decided *Miller* in 1943, or when the Eighth Circuit decided *Mahowald* in 1954.  A *per se*

exclusionary rule for comparable pipeline easement transactions on the subject property does

not seem reasonable or appropriate in this particular case.  Further, the parties have agreed to a

court trial in this case.  When the Court is the finder of fact there is little reason to exclude

potentially irrelevant evidence because the Court is capable of determining what evidence is

relevant to consider in reaching its decision.


**III.    <u>CONCLUSION</u>**

For the reasons set forth above, the WBI Energy's "Motion in Limine to Exclude

Evidence or Testimony of Other Easement Transactions" (Docket No. 62) is **DENIED**.

**IT IS SO ORDERED**.

Dated this 1st day of April, 2021.

*/s/ Daniel L. Hovland*
Daniel L. Hovland, District Judge
United States District Court
