UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| WBI Energy Transmission, Inc., | ) Civil No: 1:18-cv-00078-DLH-CRH |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| 189.9 rods, more or less, located in Township 149 North, Range 98 W Section 11: W1/2SE1/4 Section 14: NW1/4NE1/4 McKenzie County, North Dakota, An easement and right-of-way across, et al., | ) ) ) ) ) ) |
| | ) |
| Defendants. | ) |

## RESPONSE TO MOTION FOR ATTORNEY'S FEES AND EXPENSES

Plaintiff WBI Energy Transmission, Inc. ("WBI Energy") respectfully opposes Defendants' Motion for Attorney's Fees and Expenses. Defendants' brief badly misses the mark, seeking to shoehorn a North Dakota statute into a non-existent gap in federal condemnation law. In their rush to import state law, Defendants fail to discuss United States Supreme Court precedent and statutory law that forecloses their argument. As such, this Court should deny the motion.

## **BACKGROUND**

This case is an eminent domain action under the Natural Gas Act, 15 U.S.C. § 717f(h), in which WBI Energy condemned several easements for a natural gas pipeline in McKenzie County, North Dakota. The parties settled on the amount of just compensation on the second day of trial. *See* Order Re: Settlement, Dkt. No. 108. Pursuant to their settlement, the parties stipulated to a Judgment of Condemnation that provides:

> Defendants' claims for just compensation as to the condemned pipeline easements are dismissed with prejudice, the amount of compensation having been resolved in a confidential settlement among the parties. Defendants have reserved their right to file a motion seeking recovery of attorney's fees and expenses, and Plaintiff has reserved its right to contest any such motion. Defendants' right to attorney's fees and expenses, if any, shall be the same as if the parties had proceeded to judgment on the amount of just compensation.

Dkt. No. 115 ¶ 3. Thus, "Defendants' claims for just compensation as to the condemned pipeline easements are dismissed with prejudice," and the only issue remaining is whether Defendants may recover attorney's fees and expenses. *Id.* Defendants now bring a motion for attorney's fees and expenses, arguing (wrongly) that the Court should treat their litigation expenses as an element of just compensation and graft onto federal law the standard set forth in North Dakota's eminent domain statute. *See* Dkt. No. 119.

## ARGUMENT

United States Supreme Court precedent not only prohibits fee shifting absent express Congressional authorization but also excludes litigation expenses from the definition of "just compensation" in federal condemnations. This precedent forecloses Defendants' invitation to apply a fee-shifting provision of North Dakota's condemnation statute to a federal condemnation under the Natural Gas Act. Furthermore, another federal statute expressly governs the circumstances in which landowners such as Defendants may recover attorney's fees and costs. Specifically, the Uniform Relocation Assistance and Real Property Acquisition Policies Act (the "Relocation Act") applies to Natural Gas Act condemnations (among others) and only allows recovery of attorney's fees and costs where: "(1) the final judgment is that the Federal agency [defined to include any condemnor under federal law] cannot acquire the real property by condemnation; or (2) the proceeding is abandoned by the United States." 42 U.S.C. § 4654(a).

Neither condition applies here. Because there is no gap in federal law, the *Kimbell Foods*[1] test on which Defendants rely does not apply. In the alternative, even if the Court were to apply the test (it should not), all three *Kimbell Foods* factors counsel application of federal law.

**A.     Supreme Court precedent prohibits fee shifting absent Congressional authorization and excludes costs and fees from the definition of "just compensation" in federal condemnations.**

This action arises under the Natural Gas Act, which delegates to WBI Energy the federal government's condemnation authority and thus requires "just compensation" to Defendants under the Fifth Amendment to the United States Constitution. *See* 15 U.S.C. § 717f(h). None of the claims in this case arise under state law. Given this, one might expect Defendants' analysis to begin with Supreme Court precedent regarding when parties may recover attorney's fees in cases arising under federal law, and specifically whether landowners may recover litigation expenses in a federal condemnation proceeding. Such precedent does exist, though Defendants fail to discuss or even acknowledge it.

As described by the Supreme Court, "Our basic point of reference when considering the award of attorney's fees is the bedrock principle known as the American Rule: Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 126 (2015) (citation omitted) (reversing fee award). The American Rule has roots in American common law dating to at least the 18th century, and statutes that invade the common law are to be read with a presumption favoring the retention of long-established and familiar legal principles. *Id.* As such, claims arising under a federal statute do not allow recovery of fees unless the statute contains a fee-shifting provision: courts "will not deviate from the American Rule absent <u>explicit</u> statutory authority." *Id.* (emphasis added, internal

---

[1] *United States v. Kimbell Foods, Inc.*, 440 U.S. 715 (1979).

quotation marks and citations omitted); *accord McNabb v. Riley*, 29 F.3d 1303, 1306 (8th Cir. 1994) (holding that statute allowing "costs" did not allow recovery of fees and noting that federal fee-shifting statutes "all have one feature in common—they *expressly* authorize an award of attorney's fees" (emphasis in original)).  In other words, "the circumstances under which attorneys' fees are to be awarded and the range of discretion of the courts in making those awards are matters for Congress to determine."[2]  *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 262 (1975) (seminal case holding American Rule governs claims arising under federal statutes).

This precedent forecloses federal courts hearing federal claims from looking to state laws on attorney's fees as an end-run around the American Rule, because "federal common law disfavors the award of attorney's fees in federal question cases absent an express congressional directive."  *Home Sav. Bank by Resol. Tr. Corp. v. Gillam*, 952 F.2d 1152, 1162 (9th Cir. 1991) (reversing fee award based on Alaska law in a federal claim).  A number of federal courts have thus rejected attempts to apply state attorney's fees laws to federal claims.  *See, e.g.*, *Modzelewski v. Resol. Tr. Corp.*, 14 F.3d 1374, 1379 (9th Cir. 1994) ("[S]ince we address federal, not state claims, the federal common law of attorney's fees, and not Arizona law, is the relevant authority."); *Design Pallets, Inc. v. Gray Robinson, P.A.*, 583 F. Supp. 2d 1282, 1287 (M.D. Fla. 2008) (denying request for fees under state law and holding "[o]nly Congress may create exceptions to the American Rule where federal claims are at issue").

Concerning federal condemnation cases specifically, just compensation does not include attorney's fees or other litigation costs.  In defining just compensation, the Supreme Court has consistently held that just compensation "is for the property, and not to the owner."  *United States*

---

[2] Courts also have inherent authority to award fees pursuant to the common fund doctrine or in connection with sanctions. *Alyeska Pipeline*, 421 U.S. at 258–59.  But neither of those scenarios are at issue here.

4

*v. Bodcaw Co.*, 440 U.S. 202, 203 (1979) (quoting *Monongahela Navigation Co. v. United States*, 148 U.S. 312, 326 (1893)).  As a result, "indirect costs" such as attorney's fees and expenses "are not embraced within just compensation."  *Bodcaw*, 440 U.S. at 203 (quoting *Dohany v. Rogers*, 281 U.S. 362, 368 (1930)).  Likewise, "appraisal expenses [are] not part of the 'just compensation' required by the Fifth Amendment."  *Bodcaw*, 440 U.S. at 204.  Congress first enacted the Natural Gas Act in 1938, eight years after *Dohany* first held that attorney's fees and expenses are not embraced within just compensation, and Congress amended the Natural Gas Act ten years after the Supreme Court reiterated that rule in *Bodcaw*.  Had Congress intended that litigation expenses be recoverable in Natural Gas Act condemnations, it would have included fee-shifting provisions.

In Natural Gas Act cases, federal courts around the country have relied on the above principles in reasoning that landowners cannot recover litigation expenses.  *See, e.g.*, *Northern Nat. Gas Co. v. Approximately 9117 Acres*, 114 F. Supp. 3d 1144, 1171 (D. Kan. 2015), *aff'd in part, rev'd in part sub nom. Northern Nat. Gas Co. v. L.D. Drilling*, 862 F.3d 1221 (10th Cir. 2017) (affirmed as to denial of attorney's fees)[3]; *Millennium Pipeline Co., L.L.C. v. Acres of Land, Inc.*, No. 07-CV-6511L, 2015 WL 6126949, at *3 (W.D.N.Y. Oct. 16, 2015) ("Attorneys fees and expert witness fees are not recoverable, but are costs each side must bear.  [The *pro se* landowner] should be aware that courts routinely hold that there is no provision for an award of attorneys' fees in the Natural Gas Act." (internal quotation omitted)); *Williston Basin Interstate Pipeline Co. v. Property Interests Necessary to Conduct Gas Storage Operations*, No. CV-09-167-BLG-RFC, 2010 WL 5104991, *3 (D. Mont. Dec. 9, 2010) (holding American law does not provide for the award of attorney fees absent a contractual or statutory provision to the contrary, and there is no

---

[3] On appeal, the Tenth Circuit held that the Kansas attorney's fees provisions at issue did not apply to the facts of the case and thus did not reach the choice-of-law issue.

basis for awarding attorney's fees in the Natural Gas Act or Fed.R.Civ.P. 71.1); *Irick v. Columbia Gas Transmission Corp.*, No. 5:07cv00095, 2008 WL 191324, *3 (W.D. Va. Jan. 22, 2008) (holding state law on attorney's fees inapplicable to inverse condemnation claim alleging company took land outside the tract defined in its Natural Gas Act complaint).

At least one such Natural Gas Act case has expressly declined to extend the line of authority on which Defendants rely in their request for litigation expenses. In *Atlantic Coast Pipeline, Inc. v. 1.51 Acres*, the court rejected "defendants' argument that it need adopt North Carolina's fee-shifting rules as federal common law." No. 5:18-CV-127-BO, 2021 WL 535469, at *2 (E.D.N.C. Feb. 12, 2021). Citing the Third Circuit's *Tennessee Gas*[4] case relied on by Defendants here, that court concluded, "The cases cited by defendants wherein courts have applied state common law have done so in the context of determining just compensation, not attorney fees and expenses." *Id.* Such Natural Gas Act caselaw starkly contradicts Defendants' assertion federal courts have "uniformly held" that "issues related to costs and fees must be determined based on the substantive state law of the forum state." Dkt. No. 119, at 1.[5]

---

[4] *Tennessee Gas Pipeline Co., LLC v. Permanent Easement for 7.053 Acres*, 931 F.3d 237 (3d. Cir. 2019).

[5] Defendants also wrongly state that federal courts have "uniformly held" state law applicable to "the measure of damages" in Natural Gas Act cases. Dkt. No. 119, at 1. Federal courts have split on that issue, and Defendants cite only the cases that have adopted state law. *See, e.g.*, *WBI Energy Transmission, Inc. v. Easement & Right-of-Way Across in Big Horn & Yellowstone Ctys., Montana*, No. CV 14-130-BLG-SPW, 2015 WL 4216841, at *3 (D. Mont. July 10, 2015) (discussing split of authority and collecting cases); *Columbia Gas Transmission, LLC v. 252.071 Acres*, No. ELH-15-3462, 2016 WL 7167979, at *3 (D. Md. Dec. 8, 2016) (Natural Gas Act case holding that "[u]nless otherwise proscribed by Congress, federal law governs 'questions of substantive right, such as the measure of compensation' for federal courts in condemnation proceedings" (quoting *United States v. Miller*, 317 U.S. 369, 379-80 (1942)); *Mountain Valley Pipeline, LLC v. 4.31 Acres of Land*, No. 7:19-CV-00679, 2021 WL 2322822, at *1 (W.D. Va. June 7, 2021) (acknowledging *Tennessee Gas* as contrary authority but applying federal law rather that state law to pre-judgment interest award in Natural Gas Act case).

**B.     The Relocation Act defines the circumstances under which landowners may recover attorney's fees in a Natural Gas Act condemnation, and Defendants do not qualify.**

The above case law makes clear that landowners cannot recover attorney's fees or costs in a federal condemnation, including a Natural Gas Act case, absent express authorization by Congress. To the extent the caselaw leaves any doubt, Congress has removed the doubt by expressly defining only two narrow circumstances in which a landowner may recover attorney's fees and expenses in Natural Gas Act condemnations. Defendants are simply wrong when they claim that "[a]pplicable federal law and rules provide no direction on cost and fee awards." Dkt. No. 119, at 1.

Although the Natural Gas Act does not expressly address recovery of litigation expenses, the Relocation Act is a federal statute that provides standards for federal programs requiring the acquisition of real property. *See generally* 42 U.S.C. ch. 61. In 1987, Congress amended the definition of "Federal agency" in the Relocation Act to include private actors granted the power of eminent domain. *See* Uniform Relocation Act Amendments of 1987, Pub. L. No. 100–17, § 402, 101 Stat. 132, 246. Following the amendment, the statute defines "Federal agency" to include not only the federal government but also "any person who has the authority to acquire property by eminent domain under Federal law." 42 U.S.C. § 4601(1). In turn, the statute defines "person" to mean "any individual, partnership, corporation, or association." *Id.* § 4601(5). As a result, certain provisions of the Relocation Act now apply to condemnations under the Natural Gas Act, which grants certain companies eminent domain authority under federal law. *See* 15 U.S.C. § 717f(h).

Regarding the recovery of litigation expenses, the Relocation Act provides:

> The Federal court having jurisdiction of a proceeding instituted by a Federal agency to acquire real property by condemnation shall award the owner of any right, or title to, or interest in, such real property such sum as will in the opinion of the court reimburse such owner for his reasonable costs, disbursements, and expenses,

7

>including reasonable attorney, appraisal, and engineering fees, actually incurred because of the condemnation proceedings, if--
>
>> (1) the final judgment is that the Federal agency cannot acquire the real property by condemnation; or
>>
>> (2) the proceeding is abandoned by the United States.

42 U.S.C. § 4654(a). Thus, the Relocation Act expressly defines two limited situations in which landowners may recover litigation expenses in condemnations arising under federal law. "Congress intended to create only a narrow exception to the general rule of nonrecovery for litigation expenses in condemnation cases," and "legislative history of the [Relocation] Act supports a restrictive reading of the statute." *United States v. 410.69 Acres*, 608 F.2d 1073, 1076 (5th Cir. 1979). Recovery of litigation expenses under the Relocation Act "is a matter of legislative grace rather than constitutional command." *Bodcaw*, 440 U.S. at 204.

Not surprisingly, federal courts have held that the litigation expenses provision of the Relocation Act applies to Natural Gas Act condemnations. *See, e.g.*, *Transwestern Pipeline Co., LLC v. 17.19 Acres*, 627 F.3d 1268 (9th Cir. 2010); *Atl. Coast Pipeline, LLC v. 3.13 Acres*, No. 4:18-CV-35-BO, 2021 WL 3236589, at *1–2 (E.D.N.C. July 29, 2021). This line of cases recognizes that "[i]n condemnation cases, the general rule is that litigation expenses are nonrecoverable, but Congress created a narrow exception to that rule when it enacted the [Relocation Act]." *3.13 Acres*, 2021 WL 3236589, at *1; *accord Atl. Coast Pipeline, LLC v. 3.92 Acres*, No. 5:18-CV-258-BO, 2021 WL 102186, at *1 (E.D.N.C. Jan. 12, 2021). Here, Defendants do not qualify for recovery of litigation expenses under the conditions defined by the Relocation Act, because WBI Energy acquired the property at issue under a Judgment of Condemnation entered by the Court. *See* Dkt. No. 115.

**C.     Because there is no gap in federal law, the *Kimbell Foods* analysis does not apply.**

The *Kimbell Foods* test exists only to fill gaps in federal law. If no gap exists, the test does not apply. As discussed below, no gap exists in the federal statutory scheme with respect to litigation expenses, and the line of cases Defendants rely upon do not establish such a gap. Also, even if the statutory scheme did not answer the question (it does), Supreme Court precedent makes clear that damages in federal condemnations are rooted in just compensation under the Fifth Amendment, which does not embrace litigation expenses. For both reasons, *Kimbell Foods* does not apply here.

**1.     No gap exists in the federal statutory scheme with respect to litigation expenses, and Defendants' cases do not establish such a gap.**

**a.     No gap exists in the federal statutory scheme.**

In their motion, Defendants rely primarily on a line of cases that have looked to state law to inform the measure of damages in federal condemnations. Some federal courts have reached this result by applying a three-factor test announced by the Supreme Court in *United States v. Kimbell Foods, Inc.*, under which courts may consider whether to adopt state rules to fill gaps in federal law. *See* 440 U.S. 715 (1979). Before a court may reach the *Kimbell Foods* analysis, however, it must "determine that there exists a gap in the statutory scheme," as recognized by one of Defendants' leading cases. *Tenn. Gas Pipeline Co., LLC v. Permanent Easement for 7.053 Acres*, 931 F.3d 237, 247 (3d Cir. 2019). Even where "Congress did not specifically address" the issue at hand, "*Kimbell Foods* is inapplicable" if a federal statute "does provide sufficient direction for a decision." *United States v. Great Plains Gasification Assocs.*, 813 F.2d 193, 195 (8th Cir. 1987). *Great Plains Gasification*, for instance, declined to apply a right of redemption under North Dakota law where "Congress has not explicitly dealt with redemption rights of loans guaranteed

under the Act[6] but it has provided the procedure to be followed upon default." *Id.* at 196. The Eighth Circuit reasoned that "the language of the Act would be rendered superfluous if North Dakota law were to apply." *Id.*

No gap in federal statutory law exists with respect to awards of litigation expenses in Natural Gas Act condemnations. Defendants stress that 15 U.S.C. § 717f(h) and Rule 71.1 are silent as to the award of fees and costs. Silence, however, does not equate to a gap in the law when it comes to fee shifting. Rather, the Supreme Court has enunciated a rule of statutory construction under which federal courts "will not deviate from the American Rule absent explicit statutory authority." *Baker Botts*, 576 U.S. at 126 (internal quotation marks and citations omitted).

Moreover, even setting aside that rule of construction, Congress has expressly defined the circumstances under which landowners like Defendants may recover attorney's fees in a Natural Gas Act condemnation. *See* 42 U.S.C. § 4654(a). As detailed above, the Relocation Act governs requests for "costs, disbursements, and expenses, including reasonable attorney, appraisal, and engineering fees." *Id.* Defendants plainly cannot establish either of the conditions under which a court may award litigation expenses under the Relocation Act. *See id.* As in *Great Plains Gasification*, "the language of the [Relocation Act] would be rendered superfluous if North Dakota law were to apply," because the North Dakota rule would allow defendants to recover fees and expenses regardless of whether they meet the conditions defined by Congress in the Relocation Act. 813 F.2d at 196. To reach the result they desire, Defendants invite this Court to ignore not only Supreme Court rules of construction but also black-letter statutory law. The Court should decline the invitation.

---

[6] *Great Plains Gasification* dealt with a default on a loan guaranteed pursuant to the Federal Nonnuclear Energy Research and Development Act. *See* 813 F.2d at 194.

10

### b. The cases cited by Defendants do not establish a gap in the federal statutory scheme as to attorney's fees and costs.

The appellate decisions cited by Defendants in support of their *Kimbell Foods* analysis focus on application of state property laws to the measure of just compensation, as opposed to recovery of litigation expenses specifically. Whatever the merits or faults of these cases, they simply do not grapple with the body of federal law specific to recovery of litigation expenses. For instance, they do not address the Supreme Court precedent holding that the American Rule applies absent express statutory fee shifting, nor do they address the Relocation Act's express statutory scheme for fee shifting in federal condemnations.

For instance, the *Tennessee Gas* case decided "to incorporate state substantive law as the federal standard of measuring just compensation" in a Natural Gas Act condemnation. 931 F.3d at 255. The decision surveyed various Pennsylvania laws on just compensation and cited in passing a state law on "recovery of professional fees such as appraisal, attorney, and engineering fees." *Id.* at 245. But the court's reasoning for incorporating state law did not address litigation expenses and rather focused on "property rights" as an area of state concern and expertise. *Id.* at 251–54 (reasoning that "property rights are traditionally an area of state concern" and that a federal rule would "merely superimpose a layer of property right allocation onto the already well-developed state property regime" (emphasis added, citation omitted)).

Likewise, *Georgia Power Co. v. Sanders* dealt with how to account for "benefits accruing by virtue of the project" and "any increase in the value of the property caused by general knowledge of the project" in a Federal Power Act condemnation. 617 F.2d 1112, 1115 (5th Cir. 1980). The decision emphasized "the state's interest in avoiding displacement of its laws in the area of property rights, traditionally an area of local concern." *Id.* at 1123 (emphasis added). Similarly, *Columbia Gas Transmission Corp. v. Exclusive Natural Gas Storage Easement* dealt

11

with the "standard of valuation" for property taken in a Natural Gas Act condemnation. 962 F.2d 1192, 1193–94 (6th Cir. 1992). The decision stressed that "regardless of the rule chosen in this case, it will invariably derive its essence and much of its practical import from how the parties' property rights have been carved out under state law and how the parties have previously allocated these state-defined property rights." *Id.* at 1198 (emphasis added).

Moreover, two of the decisions cited by Defendants rely on the abrogated state "practice and procedure" provision of the Natural Gas Act as a basis for applying state law. *See* 15 U.S.C. § 717f(h) ("The practice and procedure in any action or proceeding for that purpose in the district court of the United States shall conform as nearly as may be with the practice and procedure in similar action or proceeding in the courts of the State where the property is situated."). The *Columbia Gas* case "read the statute [15 U.S.C. § 717f(h)] as raising a strong presumption that state law does provide the proper measure" of just compensation. 962 F.2d at 1197. Meanwhile, *Mississippi River Transmission Corp. v. Tabor* cited the state "practice and procedure" provision as its sole basis for applying state law to a Natural Gas Act claim. 757 F.2d 662, 665 n.3 (5th Cir. 1985) (asserting that "15 U.S.C. § 717f(h) requires that the practice and procedure in federal expropriation proceedings conform as nearly as possible with the practice and procedure to be followed in a state court action in the state where the property being expropriated is situated" and concluding "[t]herefore, Louisiana law controls the issues in this case").[7]

However, as Defendants themselves recognize in their briefing, Rule 71.1 of the Federal Rules of Civil Procedure has superseded the state "practice and procedure" provision of the Natural Gas Act. Dkt. No. 119 at 1; *Alliance Pipeline L.P. v. 4.360 Acres of Land*, 746 F.3d 362, 367 (8th

---

[7] As another distinguishing factor, the *Tabor* condemnation was filed under both state law and the Natural Gas Act. *See id.* at 667.

12

Cir. 2014). As such, this Court should afford no weight to cases relying on that provision as a basis for applying state law.

The only case cited by Defendants that specifically analyzes recovery of attorney's fees in a Natural Gas Act case is an unpublished order denying summary judgment on a fees request. *Sabal Trail Transmission, LLC v. Real Estate*, No. 1:16-CV-063-MW-GRJ, 2017 WL 2783995 (N.D. Fla. June 27, 2017). The *Sabal Trail* case uncritically relies upon and extends the reasoning in the *Georgia Power* case discussed above, regarding the measure of just compensation, without considering issues peculiar to the award of litigation expenses. *See id.* at **3–6. Nowhere does the *Sabal Trail* order examine the Supreme Court precedent that requires federal courts to apply the American Rule when construing federal statutes. And the decision completely misses the fact that the Relocation Act defines the conditions for awarding attorney's fees and expenses in Natural Gas Act cases. Had it realized that a federal statute expressly answers that question, the court may have reached a different result. As such, the *Sabal Trail* case is unpersuasive, and this Court should afford it little weight.

### 2. Supreme Court precedent makes clear that attorney's fees and costs are not embraced within just compensation.

Even if the federal statutory scheme did not directly control the outcome here (it does), Supreme Court precedent makes clear that federal law defines just compensation in a federal condemnation, and that attorney's fees and other litigation expenses are not included in just compensation under the Fifth Amendment. Federal law governs the determination of compensation in federal condemnation proceedings because the measure of compensation is a question of substantive right "grounded upon the Constitution of the United States." *United States v. Miller*, 317 U.S. 369, 379–80 (1943). As discussed above, the Supreme Court has specifically addressed litigation expenses in this context, holding that "indirect costs" such as attorney's fees

13

and expenses "are not embraced within just compensation." *Bodcaw*, 440 U.S. at 203 (citation omitted). Likewise, "appraisal expenses [are] not part of the 'just compensation' required by the Fifth Amendment." *Id.* at 204.

The cases on which Defendants rely attempt to dodge *Miller* on the basis that the case involved the United States as plaintiff, rather than a private condemnor, because "the powerful federal interest at play when the federal government is the condemnor is considerably weakened when a private entity is the condemnor." *Tennessee Gas*, 931 F.3d at 248. This distinction, however, does not bear scrutiny. *Miller's* reasoning did not turn on the federal government's interests, "but instead on the fact that the substantive right of just compensation was grounded on the United States Constitution." *Tennessee Gas*, 931 F.3d at 258 (Chagares, C.J., dissenting). "In other words, federal law applies to determine the just compensation owed upon an exercise of the federal eminent domain power because the right to just compensation is a federal substantive right, regardless of whether the taking is for an 'essential governmental function' or requires the spending of federal dollars." *Id.*; *see also Guardian Pipeline, L.L.C. v. 950.80 Acres of Land*, No. 01 C 4696, 2002 WL 1160939, at *1 (N.D. Ill. May 30, 2002) (noting that the *Georgia Power* and *Columbia Gas* cases "rely in part on a dubious distinction between government and a private entity exercising the federal power"). The Fifth Amendment sets the measure of damages in a condemnation under federal law, and the meaning of the Fifth Amendment does not vary depending on whether the federal government exercises eminent domain directly or delegates its authority.

In sum, there is no gap in federal law, so the *Kimbell Foods* test does not apply.

### D. Even if applied, the *Kimbell Foods* analysis does not counsel adoption of state law as the rule of decision.

For the reasons discussed above, no gap exists in the controlling federal law, so the Court should not reach a *Kimbell Foods* analysis. However, even if one ignores federal law that answers the question and instead applies the *Kimbell Foods* factors, the factors do not weigh in favor of adopting the state rule for awards of attorney's fees and costs. WBI Energy does not dispute that the North Dakota eminent domain statute grants the trial court discretion to award reasonable attorney's fees and costs to landowners in an eminent domain action, almost regardless of outcome. *See Cass Cty. Joint Water Res. Dist. v. Erickson*, 2018 ND 228, 918 N.W.2d 371 (affirming award of fees and costs despite recovery of less than condemnor's offer). The *Kimbell Foods* factors, however, do not support adopting such a permissive rule on the recovery of attorney's fees and expenses in a Natural Gas Act case.

The *Kimbell Foods* factors are (1) whether the federal program requires uniformity; (2) whether application of state law would frustrate specific objectives of the federal program; and (3) whether application of uniform federal law would disrupt existing commercial relationships predicated on state law. 440 U.S. at 728–29. Here, all three factors weigh in favor of federal law.

*First*, a federal program, the Relocation Act, does require uniformity as to the award of litigation expenses in Natural Gas Act condemnations. As its name suggests, the <u>Uniform</u> Relocation Assistance and Real Property Acquisition Policies Act requires uniform treatment on the topics its addresses, including recovery of litigation expenses. "The Relocation Act was enacted to 'establish[ ] a <u>uniform policy</u> for the fair and equitable treatment of persons displace[d] as a direct result of programs or projects undertaken by a federal agency.'" *Atl. Coast Pipeline, LLC*, 2021 WL 3236589, at *1 (quoting 42 U.S.C. § 4621(d) (emphasis added)). "Federal agency" is defined to include entities like WBI Energy who have "the authority to acquire property by

15

eminent domain under Federal law." 42 U.S.C. § 4601(1). Thus, even if the Relocation Act did not directly answer the question at hand (it does), Congress has expressly legislated a policy of uniformity.

Moreover, Section 717(c) of the Natural Gas Act provides that certain enumerated matters are exempted from the Act and, as "matters primarily of local concern," are "subject to regulation by the several States." 15 U.S.C. § 717(c). The exemption enumerates neither compensation awards generally nor litigation expenses specifically. Contrary to Defendants' assertion, these state-law carveouts weigh in favor of uniformity in other areas. Had Congress intended state law to control compensation awards, it would have said so in Section 717(c).

Adopting a patchwork of state laws to supplement the statutory conditions under which attorney's fees may be awarded would run afoul of the above Congressional requirements. These Congressional requirements apply regardless of whether the United States is a party to a condemnation. They also apply regardless of the fact that Rule 71.1 supplies a uniform procedure—that Congress intends uniformity in procedure does not somehow imply that Congress intends diversity in substantive rules or inconsistency in results from state to state.

In support of their argument against uniformity, Defendants also quote language from *Tennessee Gas* focusing on property valuation: "because property rights are traditionally an area of state concern, the federal interest in a nationally uniform rule for property valuation is especially weak." 931 F.3d at 251 (emphasis added). Such reasoning simply does not apply to awards of attorney's fees and costs. Fees and costs are not a matter of property law, nor are awards of litigation expenses "traditionally an area of state concern." Traditionally, state law governs fee shifting for state claims and federal law governs fee shifting for federal claims. *See, e.g.*, *Home Sav. Bank by Resol. Tr. Corp.*, 952 F.2d at 1162–63; *Modzelewski*, 14 F.3d at 1379. States have

"no special interest in the collection of attorney's fees in federal question cases litigated in federal court." *Sav. Bank by Resol. Tr. Corp.*, 952 F.2d at 1163 n.3 (distinguishing *Kimbell Foods*). As such, the first *Kimbell Foods* factor militates in favor of applying federal law.

*Second*, application of state law would frustrate specific objectives of the federal program. To begin, application of state law would frustrate the express Congressional intent for uniformity described in the Relocation Act, even if not deemed a "requirement" of the federal program. Moreover, the Supreme Court has held that the Natural Gas Act was "framed as to afford consumers a complete, permanent and effective bond of protection from excessive rates and charges." *Sunray Mid-Con. Oil Co. v. Fed. Power Comm'n*, 364 U.S. 137, 147 (1960) (emphasis added, citation omitted). Defendants and the cases they rely on cite this authority and blithely assert that adoption of more generous state rules on compensation will harm only natural gas companies. What they miss is the obvious reality that adopting state rules resulting in higher condemnation costs will increase pipeline costs and ultimately flow through to consumers in the end. This is especially so with a permissive rule on fee shifting like that under North Dakota law, which incentivizes landowners to litigate. Adopting such laws would frustrate Congress's intent to protect consumers with the Natural Gas Act. *See id.* Thus, the second *Kimbell Foods* factor also directs application of federal law.

*Third*, there are no "existing commercial relationships predicated on state law" when it comes to awards of litigation expenses, and Defendants do not identify any. Rather, "because there already exists 'an established body of federal law on the issue of just compensation' in general, parties that conduct business in this industry are already on notice of the potential application of federal law." *Tennessee Gas*, 931 F.3d at 254 (quoting *Georgia Power*, 617 F.2d at 1123 n.17). That point is particularly salient here, because long-standing Supreme Court precedent

specifically forecloses awards of litigation expenses in federal condemnations. *See Bodcaw*, 440 U.S. at 203–04.

Next, the WBI Energy correspondence quoted by Defendants is irrelevant, because it did not give rise to any "commercial relationship" involving the award of litigation expenses. By definition, those parties who <u>declined</u> to enter into a "commercial relationship" by way of a negotiated easement agreement were the only ones who incurred litigation expenses, because they were the only ones who had their property condemned. Moreover, at the time WBI Energy sent the letter, it had not yet initiated this eminent domain action, and the letter cites to both the Natural Gas Act and North Dakota's eminent domain statute. *See* Dkt. No. 73-1. In no way does the letter purport to address choice-of-law issues for attorney's fees and costs that may arise in a future condemnation action in federal court.

Defendants' primary authority on the third factor is language from *Tennessee Gas* that once again focuses on property law, reasoning that a uniform federal rule "would 'merely superimpose a layer of <u>property right allocation</u> onto the already well-developed state <u>property regime</u>.'" 931 F.3d at 254 (emphasis added) (quoting *Columbia Gas*, 962 F.2d at 1198). Again, this point simply does not apply to awards of fees and costs. Fee shifting is not a matter of state property law. The third *Kimbell Foods* factor supports application of federal law.

Thus, although this Court should not reach the *Kimbell Foods* test, all three factors weigh in favor of applying a federal rule.

## **CONCLUSION**

Controlling federal law forecloses Defendants' request for attorney's fees and costs. Supreme Court precedent prohibits fee shifting absent express Congressional authorization, and the Natural Gas Act contains no fee-shifting provision. In fact, the Relocation Act expressly governs the circumstances in which landowners such as Defendants may recover attorney's fees and costs, and Defendants do not qualify. Independently, Supreme Court precedent excludes litigation expenses from the definition of "just compensation" in federal condemnations. Because there is no gap in federal law, the *Kimbell Foods* test does not apply. In the alternative, even if the Court were to apply the test, all three *Kimbell Foods* factors counsel application of federal law rather than state law.

Based on the above and the arguments set forth herein, WBI Energy respectfully requests that the Court deny Defendants' Motion for Attorney's Fees and Expenses.

Dated this 2nd day of September, 2021.

                       */s/ Paul J. Forster*
                       Paul J. Forster (#07398)
                       Casey A. Furey (#08035)
                       Attorneys for Plaintiff,
                       WBI Energy Transmission, Inc.
                       CROWLEY FLECK PLLP
                       100 West Broadway Ave., Suite 250
                       P.O. Box 2798
                       Bismarck, North Dakota 58502-2798
                       Phone: (701) 223-6585
                       Fax: (701) 222-4853
                       pforster@crowleyfleck.com
                       cfurey@crowleyfleck.com