# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| WBI Energy Transmission, Inc., )<br>)<br>            Plaintiff, )<br>)<br>            vs. )<br>) | **ORDER GRANTING DEFENDANTS'**<br>**MOTION FOR ATTORNEY'S FEES**<br>**AND EXPENSES** |
| Easement and Right-of-Way Across, )<br>) | |
| 189.9 rods, more or less, located in )<br><u>Township 149 North, Range 98 W</u> )<br>Section 11: W1/2SE1/4 )<br>Section 14: NW1/4NE1/4, ) | Case No. 1:18-cv-078 |

189.9 rods, more or less, located in  
<u>Township 149 North, Range 98 W</u>  
Section 11: W1/2SE1/4  
Section 14: NW1/4NE1/4,

227.8 rods, more or less, located in  
<u>Township 140 North, Range 98 W</u>  
Section 11: N1/2SW1/4, W1/2SE1/4,

242.0 rods, more or less, located in  
<u>Township 149 North, Range 98 W</u>  
Section 2: SW1/4SE1/4  
Section11: NE1/4,

335.3 rods, more or less, located in  
<u>Township 150 North, Range 98 W</u>  
Section 35: W1/2E1/2,

223.8 rods, more or less, located in  
<u>Township 149 North, Range 98 W</u>  
Section 28: S1/2N1/2,

83.6 rods, more or less, located in  
<u>Township 149 North, Range 98 W</u>  
Section 14: NW1/4,

McKenzie County, North Dakota,

David L. Hoffmann; Denae M. Hoffmann; Leonard W. Hoffmann and Margaret A. Hoffmann, Trustees of the Hoffmann Living Trust dated March 8, 2002; Rocky & Jonilla Farms, LLP; Randall D. Stevenson; and all other unknown owners of the above lands,

            Defendants.

Before the Court is the "Defendants' Motion for Attorney's Fees and Expenses" filed on August 12, 2021. See Doc. No. 118. The Plaintiff filed a response to the motion on September 9, 2021. See Doc. No. 120. The Defendants then filed a reply brief on October 4, 2021. See Doc. No. 127. Subsequently, the Plaintiff filed a sur-reply on October 13, 2021. See Doc. No. 130. For the reasons set forth below, the motion is granted.

I.   **BACKGROUND**

The Plaintiff, WBI Energy Transmission, Inc. ("WBI Energy"), is a full-service interstate natural gas transmission, gathering, and storage company operating under the jurisdiction of the Federal Energy Regulatory Commission ("FERC"). WBI Energy is also a holder of a certificate of public convenience and necessity authorizing WBI Energy to acquire and operate the interstate pipeline facilities previously owned and operated by Montana-Dakota Utilities, Co. ("MDU"). See Doc. No. 1, ¶ 7. As a holder of a certificate of public convenience and necessity, WBI Energy may acquire the necessary rights-of-way to construct, operate and maintain a pipeline for the transportation of natural gas "by the exercise of the right of eminent domain" when such easement cannot be acquired by contract. 15 U.S.C. § 717f(h).

WBI Energy brought a condemnation action pursuant to Federal Rule of Civil Procedure 71.1 and the Natural Gas Act. See Doc. No. 1, ¶ 2. WBI Energy sought to "condemn permanent easements and temporary rights-of-way including workspace and access roads" across the Defendants' properties in McKenzie County, North Dakota ("Subject Easements"). Id.; see Doc. Nos. 1-2, 1-3, 1-4, 1-5, and 1-6. The purpose of the permanent easement was to construct, operate, and maintain approximately twelve (12) miles of 24-inch diameter pipeline from WBI Energy's

existing Spring Creek Meter Station to the existing Cherry Creek Valve Setting.  See Doc. No. 1, ¶ 2.

On May 7, 2018, the Court adopted a stipulation jointly filed by parties and ordered that WBI Energy shall have immediate use and possession of the Subject Easements for the purpose of constructing a natural gas pipeline transportation system.[1]  See Doc. No. 19, p. 3.  Accordingly, the only issue that remained for trial was the amount of compensation owed to the Defendants by WBI Energy for the Subject Easements.

The Court convened a bench trial on April 26, 2021.  See Doc. No. 109.  During the bench trial, the parties reached a settlement agreement.  The Court later entered a condemnation judgment on July 13, 2021.  See Doc. No. 115.  Nonetheless, the Defendants reserved their right to file a motion to seek the recovery of attorney's fees and expenses, and WBI reserved the right to contest the motion.  The parties stipulated that "[d]efendants' right to attorney's fees and expenses, if any, shall be the same as if the parties had proceeded to judgment on the amount of just compensation."  See Doc. No. 114, p. 2.  In accordance with that stipulation, the Defendants filed the pending motion and seek the "right to recover reasonable attorney's fees and related expenses" related to this case.

## II.  **LEGAL DISCUSSION**

Defendants contend they are entitled to an award of attorneys' fees pursuant to North Dakota Century Code § 32-12-32. In opposition, WBI Energy contends that the Fifth Amendment's "just compensation" measure controls because federal law supplies the exclusive measure of compensation in Natural Gas Act condemnation proceedings.

---

[1] Pursuant to the parties' stipulation, the Court also dismissed WBI Energy's claim to condemn the temporary access road easement crossing the lands of Defendants David L. Hoffmann and Denae M. Hoffmann as depicted in Docket No. 1-3.

3

It is well-established that the federal government holds the power to exercise eminent domain. See Kohl v. United States, 91 U.S. 367, 370 (1875). The federal government also has the authority to delegate its eminent domain power to private entities. Berman v. Parker, 348 U.S. 26, 33 (1954). However, the precise issue before the Court is whether state law or federal law governs the measure of just compensation in condemnation proceedings brought by a *private entity* under the Natural Gas Act. While a handful of circuits around the country have grappled with this issue, the Eighth Circuit Court of Appeals has not established concrete precedent. A private entity in the role as the condemner opens the Court to an analysis that is distinct, unique, and separate from circumstances in which the United States is filling the role of the condemner.

### A. The Natural Gas Act

The Natural Gas Act permits gas companies to acquire private property by eminent domain to construct, maintain, and operate natural gas pipelines. 15 U.S.C. § 717f(h). As it relates to choice of law, Section 717f(h) reads, "[t]he practice and procedure in any action or proceeding for [condemnation under § 717f(h)] shall conform as nearly as may be with practice and procedure in similar action or proceeding in the courts of the State where the property is situated…" Id. The statute's reference to state "practice and procedure," however, does not mean that it incorporates state law for the substantive determination of compensation. Id. "This language require[s] conformity in procedural matters only." United States v. 93.970 Acres of Land, 360 U.S. 328, 333 n.7 (1959). In any event, that language has been superseded by Rule 71.1, which establishes its own procedures applicable to condemnation cases in federal court. See Fed. R. Civ. P. 71.1, Advisory Committee Notes (1951). However, Rule 71.1 does not resolve the issue. Rule 71.1(l) simply states that the proceedings it governs are not subject to any provisions for costs set forth in Rule 54(d). It does not mean that costs are not recoverable in condemnation actions under the

4

Natural Gas Act. All that can be gathered from Rule 71.1 is that this Court is not bound by Rule 54(d).

As a result, it is clear Rule 71.1 and the Natural Gas Act are silent regarding the application of state law in condemnation proceedings under the statute. Further, it makes no mention of remedies available in condemnation proceedings, so the Court is left to determine the applicable law and remedies that accompany it. Suffice it to say the issue of whether compensation for a condemnation action brought pursuant to the Natural Gas Act should follow state law is a matter of first impression in this circuit. The Natural Gas Act is entirely silent as to the application of state law under the statute. The Court would note that the Natural Gas Act is also silent on the remedies available in the condemnation proceedings it allows. The Natural Gas Act does not even expressly require that just compensation be awarded.

WBI Energy contends no gap in the federal statutory scheme exists with respect to litigation expenses and, as such, federal law applies prohibiting an award of attorney's fees.[2] Moreover, it notes the United States Supreme Court has found attorney's fees to be outside the scope of just compensation required by the Fifth Amendment.[3] Alternatively, the Defendants argue federal law and rules provide no direction regarding an award of attorney's fees and, accordingly, state law should control compensation and cost awards in Natural Gas Act proceedings brought by private condemners. The Court concludes that a gap in federal statutory scheme certainly exists;

---

[2] WBI Energy's contention that United States v. Miller, 317 U.S. 369 (1943) controls is misguided. For the very reasons it outlined in its response to the motion, the Court is unwilling to parallel the instant action with it. WBI Energy is unable to provide any binding authority for the proposition that *Miller* applies beyond cases or circumstances where the federal government is the condemner – nothing in *Miller* or its progeny expands its reach to condemnations by private entities. In fact, courts have explicitly recognized this limitation, noting that *Miller* announced the standard for determining "only the amount of compensation due to an owner of land condemned by the United States." Certain Parcels of Land in Phila., 144 F.2d 626, 629 (3rd Cir. 1944).

[3] In United States v. Bodcaw Co., 440 U.S. 202 (1979), the United States brought a condemnation action to acquire a permanent easement, not a private party.

5

therefore, resolution of this issue follows the analysis outlined in United States v. Kimbell Foods, Inc., 440 U.S. 715 (1979) and its progeny.

### B. Introduction of *Kimbell Foods*

"When Congress has not spoken 'in an area comprising issues substantially related to an established program of government operation,'" Kimbell Foods, 440 U.S. 715, 727 (1979) (quoting United States v. Little Lake Misere Land Co., 412 U.S. 580, 593 (1973)), the Supreme Court has "direct[ed] federal courts to fill the interstices of federal legislation 'according to their own standards,'" (quoting Clearfield Trust Co. v. United States, 318 U.S. 363, 367 (1943)). This type of law that is woven by federal courts is referred to as federal common law. However, in crafting such federal common law, courts need not "inevitably . . . resort to uniform federal rules." Id. at 727-28 (citations omitted). Instead, "[w]hether to adopt state law or to fashion a nationwide federal rule is a matter of judicial policy 'dependent upon a variety of considerations always relevant to the nature of the specific governmental interests and to the effects upon them of applying state law.'" Id. at 728 (quoting United States v. Standard Oil Co., 332 U.S. 301, 310 (1947)).

*Kimbell Foods* involved the priority of competing private and federal liens, some of which were rooted in federal loan programs, in the absence of a federal statutory law setting priorities. Id. at 718. The Supreme Court addressed whether the federal courts should sculpt a uniform federal common-law rule or adopt state law as the federal standard. Id. at 728. It held a federally uniform law was unnecessary, and that state law governed the priority of liens in the absence of federal law. Id. at 740. The Court enumerated three considerations guiding its analysis: (1) whether the federal program, by its very nature, required uniformity; (2) whether the application of state law would frustrate specific objectives of the federal program; and (3) whether the application of

uniform federal law would disrupt existing commercial relationships predicated on state law. Id. at 728-29.

Where federal law governs a controversy, but there is no federal rule or decision on a particular matter, a federal court must fill the void through common lawmaking, either by fashioning a uniform, national rule or by incorporating state law as the federal standard. Tenn. Gas Pipeline Co., LLC v. Permanent Easement for 7.053 Acres, 931 F.3d 237 (3d Cir. 2019). Determining which course of action to take turns on the application of the *Kimbell Foods* factors outlined above.

### C. Guiding Precedent

Before diving into a *Kimbell Foods* analysis, the Court looks to its sister circuits for guidance. Georgia Power Co. v. 138.30 Acres of Land (Sanders), 617 F.2d 1112 (5th. Cir 1980), Columbia Gas Transmission Corp. v. Exclusive Nat. Gas Storage Easement, 962 F.2d 1192 (6th Cir. 1992), and Tenn. Gas Pipeline Co., LLC v. Permanent Easement for 7.053 Acres, 931 F.3d 237 (3d Cir. 2019) all provide some direction.

In *Georgia Power*, the Fifth Circuit sitting *en banc* addressed whether the issue of compensation in Federal Power Act condemnation cases "should be determined under federal law or under the law of the state where the condemned property is located when a licensee of the Federal Energy Regulation Commission (FERC) exercises the power of eminent domain in federal court…" Id. at 1113. The Federal Power Act has substantially similar language to that in the Natural Gas Act and allows private entities to use eminent domain to condemn private property in efforts to develop water ways. Id. at 1114. However, like the Natural Gas Act, no rule exists to dictate the appropriate compensation owed to condemnees. Id. at 1115. The Fifth Circuit held that "the law of the state where the condemned property is located is to be adopted as the appropriate

7

federal rule for determining the measure of compensation when a licensee [of the FERC] exercises the power of eminent domain pursuant to . . . the Federal Power Act." Id. at 1124. The Court highlighted that the project was undertaken by a private party – not by the federal government. Id. at 1118. Therefore, it did not significantly "implicate the interests of the United States…" Id. In addition, since FERC licensees have the choice to proceed in either state or federal court, the court concluded that integrating state law would not further frustrate the important interest in national uniformity. Id. at 1122. The Fifth Circuit emphasized "the state's interest in avoiding displacement of its laws in the area of property rights, traditionally an area of local concern." Id. at 1123. While the Fifth Circuit acknowledged that applying state law would arguably lead the condemner to pay higher costs to the property owner, that speculative possibility did not "amount[] to the kind of conflict which [would] preclude[] adoption of state law." Id. at 1121 (citation omitted).

In 1985, the Fifth Circuit Court of Appeals summarily held that the statutory language of the Natural Gas Act at 15 U.S.C. § 717f(h) required that state law be adopted as the federal rule. Mississippi River Transmission Corp. v. Tabor, 757 F.2d 662, 665 (5th Cir. 1985).

The Sixth Circuit Court of Appeals reached the same conclusion in a related case. In *Columbia Gas*, the Columbia Gas Transmission Corporation filed an eminent domain action under 15 U.S.C. § 717f(h) of the Natural Gas Act against private landowners condemning an underground storage easement. The district court selected a committee to determine the compensation owed to the landowners. The district court upheld the committee's decision regarding the compensation. However, the Sixth Circuit Court of Appeals reversed. The Sixth Circuit relied on *Georgia Power* to hold that the Natural Gas Act "incorporates the law of the state in which the condemned property is located in determining the amount of compensation due." Id. at 1199. That holding was reaffirmed in the circuit. See Rockies Express Pipeline LLC v. 4.895

8

Acres of Land, 734 F.3d 424, 429 (6th Cir. 2013) ("While condemnation under the Natural Gas Act is a federal matter, courts conducting such proceedings must apply 'the law of the state in which the condemned property is located in determining the amount of compensation due.'") (quoting Columbia Gas, 962 F.3d at 1199). Given the Natural Gas Act's silence in prescribing the appropriate compensation, the Court turned to the *Kimbell Foods* analysis. In its analysis of the *Kimbell Foods* considerations, the court determined that "(1) it is unnecessary to fashion a nationally uniform rule of compensation for private parties condemning land under the Natural Gas Act, (2) incorporating state law as the federal standard would not frustrate the specific objectives of the Natural Gas Act, and (3) property rights have traditionally been defined by state law." Id. at 1198-99. Accordingly, the Sixth Circuit adopted state law as the federal standard to govern compensation determinations under the Natural Gas Act. Id. at 1199.

Finally, in 2019, the Third Circuit Court of Appeals decision in *Tennessee Gas* provides the most recent pronouncement on the issue. In *Tennessee Gas*, the Tennessee Gas Pipeline Company commenced a condemnation action under the Natural Gas Act seeking to acquire easements over a 975-acre tract of land on property owned by the appellants. Tennessee Gas, 931 F.3d at 241. On interlocutory appeal, a sole legal issue presented was whether state law or federal law governs the substantive determination of just compensation in condemnation actions brought by private entities under the Natural Gas Act.

The Third Circuit Court of Appeals said that the Natural Gas Act is completely silent as to the appropriate compensation owed to condemnees under the statute. As a result, the *Kimbell Foods* framework and analysis is appropriate. The Third Circuit held that Pennsylvania substantive law provided the federal standard for determining just compensation in a condemnation proceeding brought by a natural gas pipeline company acting under the authority of 15 U.S.C. §

9

717f(h) because a gap clearly existed in the statutory scheme of the Natural Gas Act. Id. at 255. In its decision, the Third Circuit explained that fashioning a national uniform rule is unnecessary, incorporating state law does not frustrate the Natural Gas Act's objectives, and the application of a uniform federal rule would upset commercial relationships founded on state law. Id. at 251. In other words, the *Kimbell Foods* factors weigh in favor of incorporating state law as the federal rule in this context. The analysis ultimately led to the decision that state substantive law would control.

In summary, the Third Circuit in *Tennessee Gas* reached the following conclusion:

> In sum, we determine that, at the threshold, federal law is the interpretive basis to determine just compensation in condemnation proceedings arising out of the NGA. But, because neither *Miller* nor any other binding authority provides a federal rule of decision as to what constitutes just compensation precisely where a private entity condemns private property under the statute, we turn to *Kimbell Foods*. That case and its progeny reflect a presumption in favor of state law, one not rebutted here. Even without that presumption, however, the *Kimbell Foods* factors collectively weigh in favor of state law because, for the reasons explained previously, (1) fashioning a nationally uniform rule is unnecessary, (2) incorporating state law does not frustrate the NGA's objectives, and (3) application of a uniform federal rule would upset commercial relationships. In light of this analysis, we decide to incorporate state substantive law as the federal standard of measuring just compensation in condemnation proceedings by private entities acting under the authority of the NGA.

Id. at 255.

### D. *Kimbell Foods* Analysis

Given the conclusion that a gap in statutory scheme exists, the Court turns to the factors outlined in *Kimbell Foods*. An analysis of these factors assists the Court in its determination and decision whether to fashion a uniform common law or incorporate state law as the applicable federal rule. The Court starts with the presumption that state law should be incorporated unless there is an expression of legislative intent to the contrary, or a showing that state law significantly conflicts with the federal interest present. See Kimbell Foods, 440 U.S. at 739 (citations omitted); Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 98 (1991) ("The presumption that state law should

be incorporated into federal common law is particularly strong in areas in which private parties have entered legal relationships with the expectation that their rights and obligations would be governed by state-law standards." (citing, Kimbell Foods, 440 U.S. at 728-29, 739-40). Here, there is neither. Accordingly, the Court presumes that state law should be incorporated in this case.

1. **There is No Overriding Need for a Nationally Uniform Rule**

In this case, fashioning a nationally uniform rule is unnecessary for a plethora of reasons, but most important is: (1) the case involves two private parties, not the United States government, and (2) property rights are an area of state concern, especially in North Dakota. Although federal rules have been applied to the determination of just compensation in federal condemnation cases where the United States is the party condemning and paying for the land, those decisions do not control because this case arises in the context of a proceeding by a licensee where the nature of the federal interests involved differs markedly from the nature of the federal interests involved where the United States is the condemner. Georgia Power, 617 F.2d at 1119-20. (citation omitted). When the condemner is no longer the United States, it does not significantly implicate the interests of the United States. As reasoned in *Kimbell Foods*, when the government is involved, it "generate[s] immediate interests" and therefore warrant[s] federal law and, on the other hand, cases "purely between private parties" that "do not touch the rights and duties of the United States" and are thus "far too speculative, far too remote . . . to justify the application of federal law to transactions essentially of local concern." Bank of Am. Nat'l Tr. & Sav. Ass'n v. Parnell, 352 U.S. 29, 33-34, (1956). WBI is in the role of the condemner and does not "generate the same immediate interests" as the government would in its exact same shoes.

Second, property rights are traditionally an area of state concern, especially in North Dakota. See 36 C.J.S. Federal Courts § 189(5) (1960) ("As a general rule, legal interests and rights in property are created and determined by state law. . . . [Thus,] the courts of the United States have applied state law in cases involving . . . the power of eminent domain and its exercise . . . ."), See also Nat'l R. Passenger Corp. v. Two Parcels of Land, 822 F.2d 1261 (2d Cir. 1987) (a state generally has an interest in avoiding displacement of its laws in the area of property rights; and that since state law usually governs the question of what constitutes property, the value of property rights is ordinarily best determined according to state law.) The federal interest in a nationally uniform rule is especially weak because of the strong correlation between the state and property rights. From farming to original homesteads, it is in the blood of North Dakota landowners to be protective of their real estate. From family ties to the need for farmers to grow crops, property ownership is near and dear to those who maintain it. Ultimately, creating a nationally uniform rule for compensation risks "muddying elaborate state property rules" and interests therein. In addition, the Natural Gas Act contemplates state participation in numerous ways which undermines the argument for a national, uniform rule of compensation. Notably, the statute allows licensees to bring condemnation actions under the Act in state court. See 15 U.S.C. § 717f(h). Accordingly, a uniform nation rule is inappropriate in this case.

### 2. **Application of the North Dakota Century Code Does Not Frustrate the Objectives of the Natural Gas Act**

The second factor under *Kimbell Foods* requires a probe into the objectives of the Natural Gas Act and an evaluation of the potential interests that would be frustrated by the injection of state law found within the North Dakota Century Code. The Court believes incorporating North Dakota law as the federal standard will not frustrate the objectives of the Natural Gas Act. The Act

12

declares its purpose as furthering the public interest "in matters relating to the transportation of natural gas and the sale thereof in interstate and foreign commerce." 15 U.S.C. § 717(a). The only imaginable result that adopting state law as the measure of just compensation might have on this purpose would be that condemners proceeding under the Act may be required to pay more or less than under an alternative federal common-law rule. Georgia Power, 617 F.2d at 1121. To the degree that compensation under state law may deviate from that under a federal rule, the Court holds this variance is entirely too speculative to warrant displacing state law.

### 3. **Application of a Uniform Federal Rule Would Upset Commercial Relationships**

The final prong to be evaluated under the *Kimbell Foods* analysis requires the Court to consider whether application of a uniform federal rule would upset commercial expectations found in state law. On the one hand, because there already exists "an established body of federal law on the issue of just compensation" in general, parties that conduct business in this industry are already on notice of the potential application of federal law. Georgia Power, 617 F.2d at 1123 n.17 (citation omitted). On the other hand, "property rights have traditionally been, and to a large degree are still, defined in substantial part by state law." Columbia Gas, 962 F.2d at 1198 (citation omitted). If a nationally uniform rule was indeed formed, the rule would "merely superimpose a layer of property right allocation onto the already well-developed state property regime." Id. Indeed, "when dealing with those powers left to the states, the courts should tread gingerly" in attempting to create a uniform common law. Georgia Power, 617 F.2d at 1125 (Fay, J., concurring). The commercial relationships that have been established are long-standing and have been cemented into North Dakota's foundational practices and procedures in the area of property rights. The Court finds this factor weighs in favor of adopting state law due to the "risk of upsetting parties' commercial

expectations" based upon 'the already well-developed state property regime. Columbia Gas, 962 F.2d at 1198.

### E. North Dakota Substantive Law Permits an Award of Attorney's Fees

Based on this Court's finding that a gap in the federal statutory scheme exists, the Natural Gas Act does not answer the question at issue, and common-law has yet to be created in this domain. The Court was tasked with applying the *Kimbell Foods* factors to the present facts. An analysis of each *Kimbell Foods* factor reveals that adopting state substantive law as the federal standard of just compensation is warranted. As such, the Court "incorporates the law of the state in which the condemned property is located [to] determine[e] the amount of compensation due." Columbia Gas, 962 F.3d at 1199. All the condemned property is located in McKenzie County, North Dakota. The controlling, relevant law is North Dakota Century Code Section 32-15-32, which reads as follows:

> The court may in its discretion award to the defendant reasonable actual or statutory costs or both, which may include interest from the time of taking except interest on the amount of a deposit which is available for withdrawal without prejudice to right of appeal, costs on appeal, and reasonable attorney's fees for all judicial proceedings.

The Court concludes that, although condemnation under the Natural Gas Act is a matter of federal law, incorporating state substantive law as the federal standard of measuring just compensation proceedings by private entities is the appropriate standard for the reasons set forth in the *Kimbell Foods* analysis. Further, considerations of the historic underpinnings and ties to North Dakota property strengthens the reasoning of this Court and supports a finding that North Dakota law supplants the federal standard.

### III.    CONCLUSION

For the reasons set forth above, the "Defendants' Motion for Attorney's Fees and Expenses" (Doc. No. 118) is **GRANTED**.  In accordance with the stipulation for a schedule on the motion for attorney's fees, phase two of briefing may now commence to aid the Court in determining the reasonable amount of attorney's fees and related expenses to be awarded.

**IT IS SO ORDERED**.

Dated this 1st day of November, 2022.

>                                  */s/ Daniel L. Hovland*
>                                  Daniel L. Hovland, District Judge
>                                  United States District Court