UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| WBI Energy Transmission, Inc., ) | |
| ) | Civil No: 1:18-cv-00078-DLH-CRH |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| An Easement and Right-of-Way Across ) | |
| 189.9 rods, more or less, et al., ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO MOTION FOR ATTORNEY'S FEES AND EXPENSES**

**BRAATEN LAW FIRM**
109 North 4th Street, Suite 100
Bismarck, ND 58501
Phone: 701-221-2911
Fax:    701-221-5842

Derrick Braaten (ND #06394)
derrick@braatenlawfirm.com

*Attorney for Defendants Denae M. Hoffmann; Leonard W. Hoffmann and Margaret A. Hoffmann, Trustees of the Hoffmann Living Trust dated March 8, 2002; Rocky & Jonilla Farms, LLP; and Randall D. Stevenson*

1

**A.     The rates charged by Braaten Law Firm attorneys and staff are reasonable.**

With little basis other than a 2019 case it found that talked about different lawyers in a different case, WBI makes the claim that the Braaten Law Firm rates in this case are unreasonable. WBI acknowledged and quickly glosses over the fact that this very Court just awarded Braaten Law Firm fees at its actual reasonable hourly rates in *Continental Resources, Inc. v. Rick and Rosella Fisher*. *Continental Resources, Inc. v. Fisher*, 18-cv-00181-CSM, Dkt. No. 213 (Dec. 27, 2022).

The argument that Attorney Braaten's fees should be reduced because Attorney Sattler *generally* has more years of experience is specious.  The nature of the experience also makes a difference, and Mr. Braaten's experience has been focused on representing North Dakota farmers and ranchers on natural resources and property rights issues.

WBI's counsel proceeds to argue that the Dennert case they handled, in which the court determined a reasonable hourly rate of $275 for Lynn Boughey, is a good proxy for this case. Dkt. 137, pgs. 4-5. However, their argument in that case, that Lynn Boughey shouldn't be paid $350/hour when he had only billed clients at $250/hour, does not fairly correlate with the factual circumstances of this case. Dkt 137, p 4.  Further, Judge Rustad granted Lynn Boughey an upward departure from his actual billed rate to $275/hour to recognize his skill in this area.  Dkt. 136, ¶16. The $350/hour requested in that case was $100/hour *above* what was actually billed.  But Judge Rustad also recognized that *Dennert* was a straightforward valuation case.  *Id*. at ¶17.  The case at hand was not "a very straightforward valuation case." *Id*.  In fact, it was a case in which WBI filed motions in limine to exclude any and all evidence proffered by the landowners and lost.

Whatever happened in *Dennert*, this Court recently noted that Braaten's opposing counsel called him "seasoned in the law" of eminent domain, presumably based on reputation.  Case No.

2

1:20-cv-00079-DMT-CRH, Dkt. No. 29, pg. 25. This Court also agreed Mr. Braaten's and his staff's hourly rates were reasonable and awarded them just a couple of weeks ago. Case. No. 1:18-cv-00181-CSM, Dkt. No. 213.

**B.     The hours billed by Braaten Law Firm attorneys and staff are reasonable.**

WBI argues that hours billed by Braaten Law Firm were excessive. Most of its arguments are idle conjecture, but a few of its specific arguments merit a response. First, its entire framing of the issues is misleading, and Landowners invite the Court to review the records provided rather than WBI's characterizations. To the extent redactions for work product have been made, in this case that will likely be appealed to the 8th Circuit, the Landowners are willing to provide unredacted copies of billing records to the Court for an *in-camera* review.

WBI also takes issue with Mr. Price's time on a trial exhibit, but fails to recognize the nature of the exhibit and the fact that it was bound up with the entire trial presentation for four different landowner groups and dozens of pipelines and even more pipeline easements, all of which must be organized digitally before the process of "creating the map", which is what Mr. Price testified took 20 hours.

WBI argues that the Landowners' appraisers' invoices do not provide sufficient detail, but it is commonplace for expert consultants to not even include time records with invoices, and this is especially true with appraisal professionals who often work on flat fees bases. Further, WBI forgets that there are four separate parcels and groups of landowners here, who all needed appraisals despite the overlap in issues and close proximity of their properties.

WBI criticizes Braaten Law Firm for using law clerks. Braaten Law Firm is proud to provide opportunities for law students to obtain real-world experience. Apparently WBI's criticism is that Braaten Law Firm directed law students to conduct legal research in a complex Natural Gas Act

3

eminent domain case with numerous issues of first impression and considers this work a waste of time. The research was necessary and helpful and WBI does not say it was not – it simply takes issues with the fact that the research was done by law clerks. Those law clerks billed at a rate of $115/hour. WBI also complains about the rates attorneys are charging to conduct legal research and time attorneys take to conduct legal research. It seems Braaten Law Firm cannot win. But the use of law clerks billing at a much lower rate to conduct legal research and write research memos is not only a tradition as old as the practice of law itself, it is something that *reduces costs* for clients. Law clerks do spend a lot of their time doing legal research and writing memos, it is true. And it saves attorneys significant time and saves clients' money. WBI's complaint is unfounded and misguided.

Finally, WBI frames its argument about Braaten Law's hours by selective quotation from *H.J., Inc. v. Flygt Corp.*, 925 F.2d 257, 260 (8th Cir. 1991). A full quote from that case is more instructive:

> H.J. also argues the district court improperly reduced the lodestar by 20% for inadequate documentation. "The fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. at 437. Inadequate documentation may warrant a reduced fee. *Id.; see, e.g., Ohio-Sealy Mattress Manufacturing Co. v. Sealy, Inc.*, 776 F.2d 646, 653 (7th Cir. 1985); *International Travel Arrangers, Inc. v. Western Airlines, Inc.*, 623 F.2d at 1275. Incomplete or imprecise billing records preclude any meaningful review by the district court of the fee application for "excessive, redundant, or otherwise unnecessary" hours and may make it impossible to attribute a particular attorney's specific time to a distinct issue or claim. *Hensley v. Eckerhart*, 461 U.S. at 434, 437 & n.12. Here, counsel's billing records included numerous entries such as "legal research" or "trial prep" or "met w/client." Some entries were so vague that the district court could not determine with certainty whether they were related to this litigation, much less the claims upon which H.J. ultimately prevailed. Slip op. at 5. In the future the district court might consider directing the plaintiff to submit additional records before deciding to reduce the lodestar for inadequate documentation. Nonetheless, we cannot say that the district court abused its discretion in the present case by reducing the lodestar by 20% for inadequate documentation.

> H.J. next argues the district court incorrectly analyzed the relationship between its successful and unsuccessful claims on the merits and should not have reduced the lodestar by 50%. Success on the merits is important to a determination of the reasonableness of a fee application. "Where the plaintiff [has] achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained."

*Id*. at 260. It is important to understand that the issues with vagueness in billing records in *H.J., Inc. v. Flygt Corp.* arose from the court's need to parse out billing for different claims, some of which H.J. prevailed upon and some it lost. All work in this case was toward one end – just compensation (Landowners did not oppose the construction or WBI's early possession, for example).

And WBI's comment that Braaten Law accidentally billed time for discussion of other cases is wrong, and was a thinly veiled attempt to color facts to sound like those in the *H.J., Inc. v. Flygt Corp.* case. The reference to "Flat Rock" appears to be an error, but attorneys at Braaten Law had significant discussion regarding the *Florida Rock Industries* line of cases out of the Federal Circuit in the mid-90s,[1] and it is apparent that the billings records simply referenced the incorrect case name.

The other part WBI leaves out of its discussion of the *H.J., Inc. v. Flygt Corp.* case is that the court also indicated that if there were a legitimate concern about the sufficiency of the billing records, it could be addressed by the court requesting additional information or detail. As indicated,

---

[1] *See Florida Rock Indus., Inc. v. United States*, 791 F.2d 893, 902 (Fed. Cir. 1986); *Florida Rock Indus., Inc. v. United States*, 21 Cl. Ct. 161, 165 (1990), vacated and remanded, 18 F.3d 1560 (Fed. Cir. 1994); *Florida Rock Indus., Inc. v. United States*, 18 F.3d 1560, 1567 (Fed. Cir. 1994). Doubtless WBI would like additional detail on why the Landowners' counsel discussed these cases, but given its plans to appeal this action it is patently unfair to let WBI use this motion for fees to go on a fishing expedition regarding counsel's case theories and legal research, which appears to be its actual motivation for bringing up this issue in the billing records.

the Landowners are happy to provide additional unredacted copies of invoices for *in camera* review or any other additional documentation or detail the court might request. But in the end, it is doubtful that WBI cares about the actual documentation and will simply argue to reduce the fees and expenses no matter what the landowners provide. WBI clearly has no compunction about making any argument available to it to reduce the fees, even if it impugns the integrity of its opposing counsel in the process.

    **C.    The Landowners should receive all of fees and expenses requested.**

In addition to the fees previously requested, Landowners have incurred $3,341.00 to file this reply brief, bringing the total request to $383,375.76. The Landowners should recover all of these reasonably incurred fees and expenses under the North Dakota Constitution, and the Supreme Court of North Dakota agrees:

> The conclusion that we have reached is that the defendant was entitled to his taxable costs, although no statute authorizes such allowance. This is based upon section 14 of the Constitution, which reads as follows: "Private property shall not be taken or damaged for public use without just compensation having been first made to or paid into court for the owner…. To hold that the owner must pay his own costs in resisting attempts to take his land against his consent, without first paying adequate and just compensation therefor, would nullify to a certain extent this constitutional guaranty, and result in giving him less than just compensation for his property. The constitutional provision means that he shall receive just compensation for his property, and not that the just compensation assessed by a jury shall be diminished to the extent of his costs. The provision was designed for the benefit of the landowner, and should be construed so as to give him its benefit to the full extent.

*Petersburg Sch. Dist. of Nelson Cty. v. Peterson*, 103 N.W. 756, 759 (1905). It is worth reiterating that this ruling was based on what is now Article I, Section 16 of the North Dakota Constitution, which states in pertinent part: "Private property shall not be taken or damaged for public use without just compensation having been first made to, or paid into court for the owner…." N.D.

Const. art. I, § 16. The North Dakota Court explained: "The constitutional provision means that he shall receive just compensation for his property, and not that the just compensation assessed by a jury shall be diminished to the extent of his costs. The provision was designed for the benefit of the landowner, and should be construed so as to give him its benefit to the full extent." *Petersburg* at 759 (emphasis added).